# WHEELING.

BRYAN *et al. v.* WILLARD *et al.*

Submitted August 15, 1882—Decided December 2, 1882.

1. Under the act of June 1788, authorizing the Governor to issue grants with reservations of prior claims included within the boundaries thereof, the reservations in such grants, under said act, exclude from their operation all lands held by prior claimants at the dates of the surveys on which such grants are founded, within the exterior boundaries of the grants, whether the title was only inchoate or had been perfected by grants. (p. 72.)

2. Under an inclusive grant, issued by virtue of said act, containing a general reservation of a specified quantity of land for prior claimants, the grantee acquires no title whatever to the land so reserved. And in such case, if the title of any such prior claimant becomes forfeited for non-entry or for the non-payment of taxes, the title thus forfeited will not vest in such inclusive grantee under the act of March 22, 1842. (p. 74.)

Writ of error to a judgment of the circuit court of the county of Kanawha rendered on the 8th day of July, 1881, in an action of ejectment in said court then pending, wherein Joseph Bryan and others were plaintiffs, and John Willard and others were defendants, allowed upon the petition of said plaintiffs.

Hon. F. A. Guthrie, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*William H. Hogeman* for plaintiffs in error.

*William A. Quarrier* for defendants in error.

1. A junior inclusive grant confers no title to the grantee to the land of prior claimants inside the boundaries of the junior grant. *a.* Whether the title of the claimant be evidenced by entry, survey or grant. *b.* Or whether the exclusion and reservation contained be specific, (by names and

quantities,) or general, (without names and by aggregating quantity.)

2. The reservation and exclusion does not depend upon the act or intent of the surveyor, junior grantee, register or governor, or the words of the junior grant, but results from the act of 2d June, 1788.

3. If the title of the senior claimant be forfeited for non-entry or for non-payment, the junior inclusive grant can not take the forfeited title.

4. A person claiming a forfeited title under the act of 22d March, 1842, must show, and the burden is upon him to show, that he is in a condition to take the forfeited title.

5. Whenever it appears that there is a junior inclusive survey, with a general reservation for prior claims, and it appears that the claim is prior and wholly or in part inside of the junior grant, this is sufficient, no other proof is required. No title good or bad is granted to the junior grantee to the land included in the prior claim.

5 Pet. 81; 14 Wall. 120; 3 W. Va., 212; 10 W. Va. 387; 4 Rand., 365; 6 Munf., 49; 30 Gratt. 582.

*Thomas B. Swann* and *Smith & Knight* for defendants in error cite the same authorities as above.

SNYDER, JUDGE, announced the opinion of the Court:

This was an action of ejectment brought in the circuit court of Kanawha county, on November 5, 1877, to recover five thousand acres of land situate in said county. The defendants disclaimed title to all of said land except about one thousand one hundred acres. An issue was joined on the plea of not guilty and tried by a jury which resulted in a verdict for the defendants. The court, on July 2, 1881, gave judgment for defendants on said verdict. On the trial the plaintiffs and defendants each requested an instruction to the jury. The court refused the instruction of the plaintiffs and gave that of the defendants to the jury, and the plaintiffs excepted. The plaintiffs' bill of exceptions shows the case to be, substantially, as follows:

On the 24th day of August, 1794, Albert Gallatin and Savary de Valcoulon, according to an entry previously made

by them, caused a survey to be made of two thousand acres of land situate on the southwest side of the Kanawha river in Kanawha county, and a grant issued to them for said land, so entered and surveyed, on the 22d day of July, 1795. This tract of land, having become forfeited for the failure of the owners to have the same entered on the books of the commissioner of the revenue and pay the taxes thereon, was sold by the commissioner of delinquent and forfeited lands, by proceedings had under the acts of March 30, 1837, and March 15, 1838, providing for the sale of delinquent and forfeited lands under orders and decrees of courts. The said sale was confirmed and deeds executed to the purchasers. By a series of conveyances the title to the land thus sold, to the extent of the one thousand one hundred acres now in controversy, became vested in the defendants in this action and this constitutes their paper title to said land.

On the 24th day of October, 1794, and January 25, 1795, William Wilson made entries for eighty-five thousand six hundred acres of land on the southwest side of Kanawha river in said county, and on April 14, 1795, caused a survey thereof to be made and on the 1st day of January, 1796, a grant issued to Benjamin Martin assignee of said Wilson for said land. This is what is known as an inclusive survey and the grant contains this reservation: " But it is always to be understood that the survey upon which this grant was founded includes six thousand seven hundred and eighty-six acres of prior claims (exclusive of the above quantity of eighty-five thousand six hundred acres) which having a preference by law to the warrants and rights upon which this grant is founded, liberty is reserved that the same shall be firm and valid and may be carried into grant or grants, and this grant shall be no bar either in law or equity to the confirmation of the title or titles to the same, as before mentioned and reserved, with its appurtenances," &c.

By sundry conveyances all the title acquired by Martin under said grant and whatever title, if any, enured to said title by the forfeiture of the Gallatin title to the aforesaid two thousand acres, in and to the said eighty-five thousand six hundred acres of land, to the extent of the five thousand acres in the plaintiffs' declaration mentioned, became vested

in. the plaintiffs before, and was owned by them at the time this action was instituted, and this constitutes the plaintiffs' title to said land.

The location and identity of the lands embraced in the respective grants aforesaid are agreed in the record, and the exterior boundaries of each covers and includes the land in controversy. The Wilson survey calls for the upper back corner of the Gallatin survey and two of the exterior lines of the Wilson run inside of the boundary of the Gallatin and thus is formed an interlock of about one thousand one hundred acres which is the land in controversy in this action in this Court. There was evidence tending to prove that the defendants and those under whom they claim had been in the actual adversary possession of the said one thousand one hundred acres for a period of time beyond that prescribed as a bar by the statute of limitations. But there was no evidence that the plaintiffs had ever been in the actual possession of any part of the land in their declaration mentioned. It was shown that the plaintiffs had paid the taxes on the lands in said Wilson survey up to and including the year 1842, and that the title to the Gallatin survey had become forfeited for non-entry and the non-payment of taxes thereon prior to the said year 1842. Thereupon the plaintiffs moved the court to instruct the jury as follows:

"The court instructs the jury that inasmuch as it is a conceded fact in this action that the Gallatin survey of two thousand acres, which has been given in evidence by the defendants, was at the date of the passage of the act of March 22, 1842, concerning delinquent and forfeited lands, forfeited to the commonwealth for the non-payment of taxes due thereon, or for the failure of the owners to cause the same to be entered on the books of the commissioner of the proper counties and have the same charged with taxes according to law, that the said survey then was, by reason of said forfeiture, vested in the commonwealth; and if the jury find from the evidence that the William Wilson survey of eighty-five thousand six hundred acres and the grant thereunder given in evidence by the plaintiffs, and under which they claim, included any part of the land embraced within the boundary of the said forfeited survey, and that the persons

having just title or claim to said Wilson survey at the passage of the act aforesaid shall have paid all taxes duly assessed and charged against them, and all taxes that ought to have been assessed or charged thereon from the time they acquired title thereto, then, by virtue of the said act of March 22, 1842, that portion of the forfeited survey embraced within the boundary of the Wilson survey which had become and was vested in the commonwealth, became absolutely transferred to and vested in the said persons having such title and claim to said Wilson survey, except so far as any persons made *bona fide* claim to any part of said land by title, legal or equitable, derived from the commonwealth, and on which the taxes had been fully paid up according to law."

To the giving of which instruction the defendants objected, and in lieu thereof the defendants asked the court to instruct the jury as follows, to-wit:

"If the jury find from the evidence that the grant to Gallatin and Savary under which the defendants claim is older than the grant to Martin under which the plaintiffs claim, and that the Gallatin and Savary grant is founded on an older entry and survey than the entry and survey upon which the Martin grant is founded, and that any portion of the land in controversy is included within the calls of each of said grants, then the jury should find under the evidence in this cause that the land embraced in the said grant to Gallatin and Savary was excluded from the grant to Martin by the terms of the Martin grant, and Martin acquired no title thereto by his grant, and in that event the jury should find for the defendants as to all of the lands claimed in the plaintiffs' declaration inside of the said Gallatin and Savary grant."

To the giving of which instruction the plaintiffs objected, and the said objections of the defendants and plaintiffs respectively being argued and considered, the court was of opinion to and did accordingly sustain defendant's objections to plaintiffs' aforesaid instruction, and did overrule plaintiffs' objection to defendants' instruction; and thereupon the court refused to instruct the jury as requested by plaintiffs, but did instruct the jury as requested by defendants.

If the court properly gave the instruction asked for by the

defendants, it follows, inevitably, that it did not err in refusing the instruction requested by the plaintiffs, because the one is simply the converse of the other. The whole question, then, presented to this Court is, whether or not the circuit court erred in granting the defendants' said instruction.

The entry, survey and grant of the Gallatin survey are each prior in date to the entry, survey and grant of the Wilson survey, and being prior in time they vested in Gallatin the title to the one thousand one hundred acres in the interlock and no title thereto, then vested under the Wilson grant; consequently, if those claiming under the Wilson title ever acquired any title to the said one thousand one hundred acres, they must have acquired it under the third section of the act of March 22, 1842, which is as follows:

"3. *And be it further enacted,* That all right, title and interest, which shall be vested in the commonwealth in any lands or lots lying west of the Allegheny mountains, by reason of the non-payment of the taxes heretofore due thereon, or which may become due on or before the first day of January next, or of the failure of the owner or owners thereof to cause the same to be entered on the books of the commissioner of the proper counties, and have the same charged with taxes according to law, by virtue of the provisions of the several acts of assembly heretofore enacted in reference to delinquent and omitted lands shall be, and the same are hereby absolutely transferred to, and vested in any person or persons, (other than those for whose default the same may have been forfeited, their heirs or devisees,) for so much as such person or persons may have just title or claim to, legal or equitable, claimed, held or derived from or under any grant of the commonwealth, bearing date previous to the 1st day of January, 1843, who shall have discharged all taxes duly assessed and charged against him or them upon such lands, and all taxes that ought to have been assessed or charged thereon, from the time he, she or they acquired title thereto, whether legal or equitable: *Provided:* That nothing in this section contained, shall be construed to impair the right or title of any person or persons, who shall *bona fide* claim said land by title, legal or equitable, derived from the commonwealth, on which the taxes have been fully paid up

according to law, but in all such cases the parties shall be left to the strength of their titles respectively."

It will be seen that the benefit of the forfeited title is only transferred "for so much as such person or persons may have just title or claim to, legal or equitable claimed, held or derived for or under any grant of the commonwealth bearing date previous to 1st day of January, 1843."

It is conceded that the Gallatin title became forfeited for the non-payment of the taxes thereon prior to the 1st day of January, 1843. It is, also, conceded that the Wilson grant is dated anterior to said date, that all the taxes chargeable thereon were paid and the land in controversy is embraced within the interior boundaries of said grant. In other words, it is conceded that, if Wilson acquired title to the said one thousand one hundred acres of land by his grant, subject to the elder title of Gallatin, then, by the forfeiture of the Gallatin title he became vested with the title by virtue of said act of March 22, 1842. The only question then to be determined is, did the Wilson grant pass to the grantee therein any title whatever to the said one thousand one hundred acres? The said grant was issued under the act of June, 1788—2 Rev. Code 434—which is as follows:

"WHEREAS, Sundry surveys have been made in different parts of this commonwealth, which include in the general courses thereof, sundry smaller tracts of prior claimants, and which in the certificates granted by the surveyors of the respective counties are reserved to such claimants; and the Governor or chief magistrate is not authorized by law to issue grants upon such certificates of surveys; for remedy whereof,

"1. *Be it enacted by the General Assembly*, That it shall and may be lawful for the Governor to issue grants with reservations of claims to lands included within such survey, anything in any law to the contrary notwithstanding."

This act recites in terms that prior to its passage the Governor was "not authorized by law to issue grants," which included "in the general courses thereof, sundry smaller tracts of prior claimants." It is evident, therefore, that it was not the intention of the Legislature by said act to pass to the grantee of an inclusive grant any title to the lands of prior claimants embraced within its exterior boundaries. This in-

tention is carried into, and made manifest by, the form of the grants issued under said act. The very contract under which the grantee asserts his claim and title expressly and in positive terms states that the prior claims have preference by law to the rights conferred by this grant and that the said rights of prior claimants are reserved and shall be firm and valid against this grant. It has been uniformly held by the courts of Virginia and this State as well as by the Supreme Court of the United States and the courts of Kentucky that grants issued under this act pass no title whatever to the lands excluded and excepted therefrom for prior claims.

In *Hopkins* v. *Ward,* the court says: "The court is of opinion, that under the terms of the patent in this case, the grantee was entitled to all the land contained within the metes and bounds thereof, *subject, however,* to the reservations in said patent contained." 6 Munf. 40.

The syllabus in *Nichols* v. *Covey,* 4 Rand. 365 is, "Where a patent is issued in pursuance of the act of 1788, which includes in its general courses, a prior claim, *it does not pass to the patentee the title of the commonwealth* in and *to the lands covered by such prior claim, subject only to the title,* whatever it may be, *in the prior claimant;* but, if that title is only a prior entry, and becomes vacated by neglect to survey and return the plat, any one may lay a warrant on the same, as in other cases of vacant and unappropriated lands." This syllabus is adopted and the principles contained therein are approved and applied by this Court in *Patrick* v. *Dryden,* 10 W. Va. 387.

In *Armstrong* v. *Morrill,* Judge Clifford in deliverying the opinion of the court says: "Where the exterior boundaries of a survey under that law, (the act of 1788,) upon which a patent is founded includes tracts belonging to prior claimants, the patentee cannot in such a case recover in ejectment without showing that the tract claimed by the defendant is not within the bounds of the excluded claims, which is a direct authority that the reserved lands in a case like the present did not pass to the patentee." 14 Wal. 143; see also *Madison* v. *Owens,* 6 Litt. Select Cas. 281; *Scott* v. *Ratliffe,* 5 Pet. 81; and *Trotter* v. *Newton,* 30 Gratt. 582-89.

In *Armstrong* v. *Morrill, supra,* it was also, held that, under

the act of Virginia of June, 1788, authorizing the Governor to issue grants with reservation of claims to lands included within surveys then made, the reservation in patents granted under the act excludes from the operation of the patent all lands held by prior claimants at the date of the survey, within the exterior boundary of the patent, *whether the title was only inchoate or had been perfected by grants.*

The principle announced in these authorities, I think, fully disposes of the case at bar. The facts show that the Gallatin entry, survey and grant were prior in time each to the entry, survey and grant of Wilson, and that a portion of the lands embraced in the Gallatin grant, the one thousand one hundred acres in controversy, lie within the exterior boundaries of the Wilson survey. The Wilson expressly excepts from its grant six thousand seven hundred and eighty-six acres for prior claims. The Gallatin was certainly a prior claim and it is, to the extent of one thousand one hundred acres, within the Wilson survey. The Wilson excepts for such prior claims six thousand seven hundred and eighty-six acres; and there is no evidence whatever that this one one thousand one hundred acres is not excepted, nor that there are any other prior claims within said survey.

It is, however, claimed by the plaintiffs in error that inasmuch as they have shown that the exterior boundaries of the Wilson survey include the land in controversy, the burden is on the defendants, who claim that the Gallatin survey was reserved and excepted, to prove that the Gallatin was in fact excepted. If it is intended by this claim to assert, that the defendants must show affirmatively that it was the *intention* or caprice of the surveyor or Wilson, at the time the Wilson survey was made, to except this particular one thousand one hundred acres of land, the claim is not sustained by law or reason; but if it is simply intended to assert that the defendants shall prove that the Gallatin survey and entry were prior in time and cover the one thousand one hundred acres, the answer is, that they have done this to the satisfaction of the jury; because the instruction submitted these facts to the jury and they found them for the defendants.

In *Hopkins* v. *Ward*, where a grant had issued to Hopkins under the act of 1788 for seventy thousand two hundred and

two acres, dated July 2, 1796, which contained a reservation of forty-two thousand acres for prior claims, the court held, that Hopkins, the plaintiff, was "entitled to recover in ejectment all the land within the metes and bounds of his grant, *except such as the defendants might show themselves entitled to under said reservation.*" In this case the defendants failed to show any *prior claim*, whatever, to any part of the land included within the metes and bounds of the Hopkins grant. The defendants in the case at bar do show such prior claim and thus bring themselves within the decision in *Hopkins* v. *Ward.*

The principles announced ·as well as the reasons given in the more recent and better considered cases before cited, it seems to me, very much restrict, if they do not overrule, the doctrine laid down in the case of *Hopkins* v. *Ward.* The doctrine of the more recent cases seems to be, that, inasmuch as the grantee of an inclusive grant acquired, by the terms of his grant and the law, no title whatever to the land therein reserved and excepted for prior claims, such grantee, or those claiming under him, ought not in ejectment to recover any more land than the quantity granted to him. That being all he purchased and paid for and all that he has entered on the assessor's books and pays taxes for. The *residuum*, if not carried into grant by prior claimants, or if, in fact no such claimants ever existed, as is frequently the case, remaining in the commonwealth subject to grant as any other unappropriated lands. If, therefore, such grantee is not permitted to recover more than the quantity actually granted to him, it necessarily follows, that he can not recover from a defendant, claiming within the exterior boundaries of his grant, without showing that such defendant is occupying land granted to him; and in order to do this, he is compelled to locate his land to ascertain whether or not the defendant is occupying any part of it or whether he is on the reserved land not granted to him.

In *Hopkins* v. *Ward*, the court says: "That under the terms of the patent exhibited in this case, *the grantee was entitled to recover all the land* contained within the metes and bounds thereof, *subject*, however, *to the reservations in said patent contained.*" The language here used would seem to indi-

cate that it was the opinion of the court, that the grantee took all the land embraced in the grant *subject only* to the rights of the prior claimants, if any, and if none, he was entitled absolutely to the land. If this was the decision in that case then, the subsequent decisions of *Nichols* v. *Covey* and *Patrick* v. *Dryden* expressly overrule it; because in those cases the courts decided, that the grant does not pass the title of the reserved lands to the grantee "*subject only*" to the prior claims, but, on the contrary, no title whatever to the reserved land passed under the grant. But as the question here suggested does not properly arise in the case under consideration, it is not intended to decide whether the apparent doctrine announced in *Hopkins* v. *Ward,* has been disapproved, qualified or overruled by the subsequent cases; or whether or not that case is now law in this State, and if the law, what is its proper construction and effect. These questions are not now before us and are not decided.

The plaintiffs in the case at bar claimed title under a grant within the boundaries of which six thousand seven hundred and eighty-six acres are excepted for prior claims, to this excepted land the said grant passed no title whatever; the defendants claimed, and the jury has found, that the one thousand one hundred acres in controversy, was a prior claim lying within the boundaries of the plaintiffs' grant; consequently, the one thousand one hundred acres was a part of the excepted land and no title passed under the plaintiffs' grant to it. And the plaintiffs, having never had any "just claim legal or equitable" to any part of said one thousand one hundred acres, "held or derived from or under any grant of the commonwealth," they, or those under whom they claim, were not in a position to take the forfeited title of the Gallatin survey under the act of March 22, 1842, and the court properly so instructed the jury.

For these reasons I am of opinion, that the judgment of the circuit court be affirmed with costs to the defendants in error and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.