## HALSTED *v.* BUSTER.

ERROR TO. THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF WEST VIRGINIA.

No. 325.   Argued April 17, 20, 1891.—Decided May 11, 1891.

The act of the legislature of Virginia of March 22, 1842, relating to lands west of the Allegheny Mountains which had become vested in the Commonwealth by reason of the non-payment of taxes, did not operate to transfer such forfeited lands to the holder of an " inclusive grant" within the limits of which grant they were situated, but whose patent was subsequent in date to that of the patentees of the forfeited lands.

*Bryan* v. *Willard,* 21 West Va. 65, is followed, not only because it settles the law of the highest court of a State upon a question of title to real estate within its boundaries, which is identical with the question involved here, but also because the decision is correct.

THE case is stated in the opinion.

*Mr. Abram Burlew* for plaintiff in error.

*Mr. J. F. Brown* for defendants in error.   *Mr. W. Mollohan* was with him on the brief.

MR. JUSTICE BREWER delivered the opinion of the court.

This case has been in this court once before. A judgment in favor of the defendants was reversed on account of an error in pleading. *Halsted* v. *Buster,* 119 U. S. 341.   On its return to the trial court the pleadings were amended, and the case

proceeded to trial before a jury. The judgment and verdict were a second time in favor of defendants, and again plaintiff alleges error.

The facts are these: Upon an entry made April 12, 1785, and a survey in pursuance thereof, August 24, 1794, a patent issued, on July 22, 1795, from the Commonwealth of Virginia, for two thousand acres, to Albert Gallatin and Savary De Valcoulon. Subsequently, upon entries made October 24, 1794, and January 25, 1795, and a survey in pursuance thereof, April 14, 1795, a patent was issued, on the first day of January, 1796, to Benjamin Martin, assignee of William Wilson, by the Commonwealth of Virginia, for eighty-five thousand six hundred acres. This patent was what is known as an inclusive grant, and contained this language: "But it is always to be understood that the survey upon which this grant is founded includes 6786 acres of prior claims, (exclusive of the above quantity of 85,600 acres,) which, having a preference by law to the warrants and rights upon which the grant is founded, liberty is reserved that the same shall be firm and valid and may be carried into grant or grants, and this grant shall be no bar in either law or equity to the confirmation of the title or titles to the same, as before mentioned and reserved, with its appurtenances." This form of grant was authorized by an act of the general assembly of Virginia passed June 2, 1788, as follows:

"Whereas sundry surveys have been made in different parts of this Commonwealth, which include in the general courses thereof sundry smaller tracts of prior claimants, and which in the certificates granted by the surveyors of the respective counties are reserved to such claimants; and the Governor or Chief Magistrate is not authorized by law to issue grants upon such certificates of surveys; for remedy whereof —

"I. Be it enacted by the General Assembly, that it shall and may be lawful for the Governor to issue grants, with reservations of claims to lands included within such surveys, anything in any law to the contrary notwithstanding." 2 Rev. Code Virginia, 434.

Grants of this character have been before this court as well

as the highest courts of Virginia, West Virginia and Kentucky, their validity sustained by each of those courts, and the con-struction to be given to them adjudged to be, that no title or right passes to the patentee to any surveyed lands thus reserved within the limits of the exterior boundaries. *Scott* v. *Ratliffe,* 5 Pet. 81; *Armstrong* v. *Morrill,* 14 Wall. 120; *Hopkins* v. *Ward,* 6 Munf. (Va.) 38; *Nichols* v. *Covey,* 4 Rand. (Va.) 365; *Trotter* v. *Newton,* 30 Gratt. (Va.) 582; *Patrick* v. *Dryden,* 10 W. Va. 387; *Bryan* v. *Willard,* 21 W. Va. 65; *Madison* v. *Owens,* 6 Litt. Sel. Cas. (Ky.) 281.

It appears that the Gallatin tract, whose survey was prior to the Martin survey and patent, was, partially at least, within the exterior limits of the latter grant. By the rule, therefore, established by these decisions, the land within the Gallatin survey was excluded from the Martin grant. No title thereto, not even a conditional or inchoate one, passed by the Martin patent. Subsequently, and before the year 1842, the Gallatin lands were forfeited to the Commonwealth of Virginia in con-sequence of the non-payment of taxes. On March 22, 1842, the general assembly of Virginia passed an act, the third sec-tion of which is as follows:

"*And be it further enacted,* That all right, title and interest, which shall be vested in the commonwealth in any lands or lots lying west of the Allegheny Mountains, by reason of the non-payment of the taxes heretofore due thereon, or which may become due on or before the first day of January next, or of the failure of the owner or owners thereof to cause the same to be entered on the books of the commissioner of the proper counties, and have the same charged with taxes accord-ing to law, by virtue of the provisions of the several acts of assembly heretofore enacted, in reference to delinquent and omitted lands, shall be and the same are hereby absolutely transferred to and vested in any person or persons, (other than those for whose default the same may have been forfeited, their heirs or devisees,) for so much as such person or persons may have just title or claim to, legal or equitable, claimed, held or derived from or under any grant of the commonwealth, bearing date previous to the 1st day of January, 1843, who

shall have discharged all taxes, duly assessed and charged against him or them upon such lands, and all taxes that ought to have been assessed or charged thereon, from the time he, she or they acquired title thereto, whether legal or equitable : *Provided,* That nothing in this section contained, shall be construed to impair the right or title of any person or persons, who shall *bona fide* claim said land by title, legal or equitable, derived from the commonwealth, on which the taxes have been fully paid up according to law, but in all such cases the parties shall be left to the strength of their titles respectively." Acts of 1841 and 1842, c. 13, p. 13.

The plaintiff claims under the Martin grant; and insists that by virtue of this statute and the prior forfeiture of the Gallatin lands, the title to so much of the latter as is within the exterior limits of the Martin survey was perfected in him. The defendants claim by virtue of tax deeds made by the Commonwealth of Virginia, through its proper officer. As the plaintiff must recover on the strength of his title, the single question presented is, whether the act of 1842 operated to transfer the forfeited Gallatin lands within the Martin survey to the holders of that grant? This question must be answered in the negative. It might be sufficient to refer to the case of *Bryan* v. *Willard,* 21 W. Va. 65. In that case the precise question was before the Supreme Court of Appeals of that State, and decided against those claiming under the Martin grant. The amount of land in controversy here is not the whole of the Gallatin tract of two thousand acres, or all of that within the Martin survey; but only a small portion thereof, to wit, about one hundred acres. And in the case of *Bryan* v. *Willard,* the controversy was between parties claiming under the Martin grant and others claiming under the Gallatin grant, in respect to another portion of the latter tract also within the Martin survey. The cases are, therefore, identical. The same points were made and the same questions presented, with one exception, to be hereafter noticed; and as the title to real estate and the construction of deeds and statutes in respect thereto is a matter of local law, this court, while exercising an independent jurisdiction, follows as a rule the decisions of

the highest court of the State. *Burgess* v. *Seligman*, 107 U. S. 20.

The opinion of Judge Snyder in the case of *Bryan* v. *Willard*, in which all the other judges concurred, reviews the authorities and fully discusses the question; and if it were a new and entirely open one, and no weight were to be given to the expression of opinion from the highest court of the State, it would be difficult to resist the force of his argument.

In view of this opinion we shall content ourselves with simply stating our conclusions. No title or claim of any kind, legal or equitable, passed to the patentee, Martin, to any portion of the Gallatin tract. In *Nichols* v. *Covey, ubi supra,* the syllabus is as follows: " Where a patent is issued in pursuance of the act of 1788," " which includes in its general courses, a prior claim, it does not pass to the patentee the title of the Commonwealth in and to the lands covered by such prior claim, subject only to the title, whatever it may be, in the prior claimant; but, if that title is only a prior entry, and becomes vacated by neglect to survey and return the plat, any one may lay a warrant on the same, as in other cases vacant and unappropriated lands." *Patrick* v. *Dryden,* 10 W. Va. 387; *Armstrong* v. *Morrill,* 14 Wall. 120. The only parties entitled to the benefit of the act of 1842 are those who have " just title or claim," legal or equitable, under some grant of the Commonwealth. As the patentee had no title or claim, legal or equitable, to these excluded lands, it follows that the act was not one for his benefit.

In order to distinguish this case from that of *Bryan* v. *Willard,* and to avoid the force of that decision, counsel for plaintiff in error contends that by the Martin patent the area of excluded lands, as expressed therein, was 6786 acres; and that as there was nothing in evidence in that case to show the extent of prior claims, the presumption was that these Gallatin lands were excluded; while, in his case, he insists that he has shown other prior claims within the exterior boundaries amounting to eight or nine thousand acres, independently of the Gallatin lands; but the evidence does sustain his contention. The survey of Thomas Edgar's cla

to which he refers, (six thousand seven hundred and eighteen acres of which, according to the testimony, lie within the Martin grant,) was not completed until April 20, 1796, which was after the issue of the patent, and, therefore, that tract could not come within the description therein of excluded lands. There is nothing to distinguish the case from that of *Bryan* v. *Willard.*

Because the views expressed in *Bryan* v. *Willard* are correct, because it is the decision of the highest court of a State upon the question of the title to real estate within its boundaries, and because that case is identical with this, the judgment of the trial court is                                *Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE BRADLEY took no part in the consideration and decision of this case.