### HIGHLAND PARK MFG. CO. v. STEELE et al.

#### (Circuit Court of Appeals, Fourth Circuit. March 4, 1916.)

#### No. 1276.

1. COURTS ⊂═367—FEDERAL COURTS—FOLLOWING DECISIONS OF STATE COURTS —RULES OF PROPERTY.

J. S. conveyed land to his son, J. A. S., in trust as to one-half thereof for a grandson, J. G. S., for life, and at his death to transfer and convey it to such persons as J. G. S. might by his will direct, or in default of such will and direction to his heirs at law in fee. J. A. S. died intestate, and J. G. S. thereafter attempted to convey the land in fee. The Supreme Court of South Carolina held that the trust created was executed as to the life estate, but executory as to the remainder, because of the duty imposed on the trustee to convey the land to the remaindermen, and that the rule in Shelley's Case therefore did not apply. *Held*, that an executory trust was created, and the trustee was required to hold the legal title for the purpose of effectuating the trust, and, on the death of J. G. S. intestate, his heirs were entitled to a conveyance of the fee; the question being balanced with doubt, so as to require a federal court to follow the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ⊂═367.]

2. DEEDS ⊂═128—RULE IN SHELLEY'S CASE—ESTATES OF DIFFERENT QUALITY.

While the rule in Shelley's Case applies to equitable as well as legal estates, it does so only when the life estate and the remainder are of the same quality.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 413–415, 419–421, 427; Dec. Dig. ⊂═128.]

3. REMOVAL OF CAUSES ⊂═116—EFFECT—LEGAL OR EQUITABLE ACTIONS.

A proceeding for partition, when removed into a federal court, was properly transferred to the equity calendar.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 246; Dec. Dig. ⊂═116.]

4. TRUSTS ⊂═112—CONSTRUCTION—INTENTION.

Courts of equity, having sole cognizance of the interpretation and administration of executory trusts, have regard to and effectuate the intention of the maker of the instrument.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 162; Dec. Dig. ⊂═112.]

5. COURTS ⊂═367—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION—RULES OF PROPERTY.

In determining whether the question as to the construction and operation of a deed is balanced with doubt, so as to require a federal court to

———————

⊂═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lean to an agreement with the state court, the law of the state where the land is situated is the question for determination, and not the law as declared in other states or elsewhere.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ☞367.]

6. TRUSTS ☞154—MERGER OF ESTATES.

A grantor conveyed land to J. A. S., in trust as to one-half thereof for J. G. S. for life, and at his death to transfer and convey it to such persons as J. G. S. might by will direct, or in default of such will or direction to his heirs at law. J. A. S. died intestate, and J. G. S. subsequently attempted to convey the land in fee, and thereafter died intestate. *Held* that, while in South Carolina the rule of primogeniture still applies to the title of a trustee, and the legal title therefore descended upon the death of J. A. S. to J. G. S., his oldest son, there was no merger of the legal and equitable titles, since, when a valid trust has been created, the court enforces it according to the intention of the maker, and, if for any reason the trustee named cannot execute it, or if no trustee can be named, it appoints a trustee, and so molds its decree that the rights of the beneficial owners are preserved.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 199; Dec. Dig. ☞154.]

7. PARTITION ☞83—SUITS FOR PARTITION—ENFORCEMENT OF TRUSTS.

In a suit for partition by the heirs of J. G. S. after his death without exercising the power of appointment, the intention of the grantor could be effectuated by treating the heirs as the owners in fee of a one-half undivided interest in the land; the legal title having descended upon the death of J. G. S. to his oldest son, who was a party to the record and would be bound by the decree.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 228, 229; Dec. Dig. ☞83.]

8. REMAINDERS ☞10—DESTRUCTION OF REMAINDER BY LIFE TENANT'S CONVEYANCE.

Assuming that the conveyance by J. G. S. estopped him from afterwards exercising the power of appointment, it did not destroy the rights of the remaindermen, his heirs, or bring about any other result than a failure to exercise the power of appointment would do; it being conceded that the deed was not a valid execution of the power.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 7; Dec. Dig. ☞10.]

9. TENANCY IN COMMON ☞43—CONVEYANCE BY ONE TENANT—EFFECT.

Though one tenant in common executes a deed to a stranger to the title, describing and purporting to convey the entire tract, the deed is effectual to convey only his undivided interest, and does not in any degree disturb the rights of the other tenants.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 130–132, 136, 137; Dec. Dig. ☞43.]

10. PARTITION ☞83, 85—BETTERMENTS AND IMPROVEMENTS—ADJUSTMENT OF EQUITIES.

If one tenant in common makes a deed purporting to convey the entire tract, and the grantee, in the bona fide belief that he has acquired a good and valid title to the entire tract, places improvements upon it, the court, in directing partition, while preserving the rights of the other tenants, will direct the partition to be so made as to conserve the equities of all parties, both by providing for compensation for the betterments, and if practicable, and without prejudicing the rights of other tenants, directing the allotment of the part upon which improvements have been made to the tenant who made them.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 228, 229, 236–245; Dec. Dig. ☞83, 85.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. PARTITION ☞65—RELIEF OBTAINABLE—RELIEF INVOLVING OTHER LAND AND PARTIES.

Where land in which plaintiffs owned an undivided half interest in remainder had been divided and subdivided, and conveyances had been made between those holding fractional parts, under some of whom defendant claimed, in a suit for partition of the only part of the tract owned in common by plaintiffs and defendants, relief would not be granted, necessitating the presence of other parties and involving collateral questions foreign to those properly cognizable in such suit.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 188; Dec. Dig. ☞65.]

12. LIMITATION OF ACTIONS ☞19(4)—PARTITION—SUITS BY REMAINDERMEN.

Where land was conveyed in trust as to one-half thereof for J. G. S. for life, and at his death to convey it to his appointees by will, or in default of such will to his heirs, and J. G. S. died in 1905, without making such appointment, a suit brought by his heirs in 1910 for partition was not barred by limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 77; Dec. Dig. ☞19(4).]

13. PARTITION ☞60—PLEADING—AMENDMENT—DISCRETION.

In a suit for partition, the refusal to permit an amendment to a cross-bill was a matter of discretion in the District Court.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 166–173; Dec. Dig. ☞60.]

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville; Henry A. Middleton Smith, Judge.

Suit by E. G. Steele and others against the Highland Park Manufacturing Company. From a decree in favor of plaintiffs (212 Fed. 972) defendant appeals. Affirmed.

Charles W. Tillett, of Charlotte, N. C., and C. E. Spencer, of Rock Hill, S. C. (Tillett & Guthrie, of Charlotte, N. C., on the brief), for appellant.

J. A. Marion and D. E. Finley, both of Yorkville, S. C., and E. M. Blythe, of Greenville, S. C., for appellees.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. For the purpose of presenting the questions raised by the assignments of error, the transcript discloses the following facts:

On November 16, 1860, John Steele, of the county of York, in South Carolina, executed a deed whereby he conveyed to his son, Joseph A. Steele, in consideration of love and affection, a tract of land in York county, containing 494 acres, to have and to hold to Joseph A. Steele, his heirs and assigns:

"In trust, as to the one-half of the said piece, parcel or tract of land, to stand seised and possessed of the same for the use and benefit of my grandson the above named John G. Steele, for, and during, the term of his natural life, and at his death, to transfer and convey the same to such person, or persons, as he, the said John G. Steele, may by his will direct, or in default of such will and direction to the heirs at law of the said John G. Steele, in fee."

Joseph A. Steele died intestate, leaving as his heirs at law his widow, Eliza Jane Steele, his son, John G. Steele, and five daughters.

On August 3, 1868, and after the death of his father, John G. Steele executed a deed of statutory form, sufficient to convey in fee, with general warranty, the entire tract to James Pagan. Appellant, Highland Park Manufacturing Company, by successive conveyances, acquired all of the title which passed to, and vested in, Pagan by virtue of the deed of John G. Steele, to that portion of the original tract described in the pleadings herein. Appellant, and those under whom it claims, have been in possession of the land in controversy, since October 13, 1884. Improvements, alleged to have cost $250,000, have been placed upon the land, by appellant and its immediate grantor. John G. Steele died July 5, 1905, without having published a last will. Plaintiffs are his widow and children, and, under the canons of descent of South Carolina, his heirs at law. This proceeding was instituted on June 6, 1910, in the court of common pleas of York county, for the purpose of having partition of the portion of the land, described in the bill, and removed into the District Court of the United States for the Western District of South Carolina, upon petition of appellant, a North Carolina corporation. Appellant denies that appellees have any title to, or interest in, the land, and avers that it is sole seised thereof, in fee. Other facts, pertinent to other phases of the controversy, will be noted later. The cause was referred to Hon. Ernest Moore, special master, who, after hearing the testimony, reported as his conclusion of fact and law that the appellant and appellees were seised of the land in controversy as tenants in common—each being entitled to one-half undivided interest therein. He also passed upon, and made report in regard to, the claim for betterments and rents and profits, with his conclusion as to the value of the interests of the respective parties, and the equitable method of making partition. Upon the coming in of the report, appellant filed exceptions thereto, which were heard and, after argument and consideration, overruled, and a decree entered, by the District Judge, to which appellants assigned error and appealed.

[1] We are confronted, at the threshold, with the contention that the questions presented upon appellant's assignments of error, are not open to an exercise, or expression, of the independent judgment of this court, for that the same questions have been litigated in, and decided by, the Supreme Court of South Carolina; that by the decisions of that court, a rule of property has been established in the jurisprudence of that state, in accordance with the contention of appellees and the decision of the District Court. Our attention is called to the decision rendered in the case of Steele v. Smith (on November 30, 1909) 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939, and the cases cited by the court in the opinion therein.

Before proceeding to an examination of the decision made by the court in that case, we pause to ascertain the principle, or rule, by which this court should be governed in disposing of this contention. The question, in different phases, and under different aspects, has been frequently before the Supreme Court. In Kuhn v. Fairmount Coal

Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, Mr. Justice Harlan reviewed the decisions and, writing for the majority of the court, said:

"We take it, then, that it is no longer to be questioned that the federal courts, in determining cases before them, are to be guided by the following rules: (1) When administering state laws and determining rights accruing under those laws, the jurisdiction of the federal courts is an independent one, not subordinate to, but co-ordinate and concurrent with, the jurisdiction of the state courts. (2) Where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the federal courts as authoritative declarations of the law of the state. (3) But where the law of the state has not been thus settled, it is not only the right, but the duty of the federal court to exercise its own judgment, as it also always does, * * * upon the doctrine of commercial law and general jurisprudence. (4) So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, *or when there has been no decision by the state court on the particular question involved*, then the federal courts properly claim the right to give effect to their own judgment as to what is the law of the state, applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court, if the question is balanced with doubt."

The doctrine is discussed, and applied, in Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, and numerous other cases cited in the opinion.

In Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865, Mr. Justice Story, construing the thirty-fourth section of the Judiciary Act (Act Sept. 24, 1789, c. 20, 1 Stat. 92 [Comp. St. 1913, § 1538]), says that:

It is limited in "its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intraterritorial in their nature and character."

So, in McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545, Mr. Justice Miller said:

"It is a principle too firmly established to admit of dispute at this day that to the law of the state in which land is situated must we look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of conveyances."

The same learned justice in Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858, discussing the suggestion that the federal court should exercise its independent judgment upon a question affecting the title to real property, there an equity of redemption, in regard to which there was in force a state statute, said:

"To do so is at once to introduce into the jurisprudence of the state of Illinois the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right."

While we do not deem it of importance, we note the fact, pressed upon our attention, that the statute of uses, 27 Henry VIII, is in force in South Carolina, by virtue of an enactment of the Legislature of

that state.  Code 1912, vol. 1, § 3673.  It is manifest, therefore, that we must endeavor to ascertain and declare the law of the state of South Carolina in regard to the determinative question involved.

In Steele v. Smith, 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939, it appears that plaintiffs were the same persons as appellees in this case, and claimed title to a portion of the same tract of land conveyed by John Steele to Joseph A. Steele, in the same right as they claim in this record.  Defendants, in that case, claimed under the same right as appellant does here, and had such title as was conveyed by John G. Steele to Pagan.  The case so far is, therefore, on all fours with that presented in this record.  The opinion of the court was written by Chief Justice Jones.  Several of the counsel appearing here were of counsel in that case and many of the authorities cited and relied upon in this court were cited upon the argument of that case.  The Chief Justice states the contention made by the parties:

"Plaintiffs claim that John G. Steele had only a life estate, and having died without executing the power * * * by will, they are entitled to partition * * * as heirs of John G. Steele, and remaindermen under the deed of John Steele, Sr.  The court sustained this contention.  The defendants appellants contend that under the rule in Shelley's Case John G. Steele had a fee-simple estate, * * * which they acquired."

The Chief Justice, after stating the rule in Shelley's Case, as laid down by Mr. Preston, proceeds to say:

"The case of Porter v. Doby, 2 Rich. Eq. (S. C.) 53, shows that executory trusts are exempt from the operation of the rule in Shelley's Case, and that the test of an executory trust is whether the trustee has some duty to perform, for the performance of which it is necessary that the title be regarded as abiding in him."

Referring to the argument made by defendant's counsel, in which it was sought to bring the case within the rule, by showing that the trust is executed, the Chief Justice says:

"The argument to this point is keen and forceful, and there is some high authority for the view.  But we think it is clear that the trust in this case is such an executory trust as will prevent the application of the rule in Shelley's Case.  In order to convey the fee to the appointee of the life tenant, it was essential to the performance of his duty that the trustee retain the title in fee until it was ascertained that there was default of such appointment at the termination of the life estate.  The trust was not a perfect trust, as it involves for its full execution the exercise or failure to exercise discretionary power of appointment by the life tenant. * * * Hence the case clearly falls within the definition of an executory trust in Perry on Trusts, relied upon by appellant."

He quotes, at length, the language of Mr. Perry (section 359), and continues the discussion, saying:

"The trust in the case at bar would be executory with respect to the statute of uses.  The test whether the trust is active or passive is: Has the trustee any duty to do, the performance of which requires that the legal title shall remain in him?  If so, the trust is active and executory under the statute; if not, it is passive and executed under the statute."

The principle upon which the decision is to be placed is thus clearly stated.  It was strongly urged that, applying the principle, the words

used by the grantor in the deed, do not create an executory trust— that it is executed. The Chief Justice says:

"The duty of the trustee to convey to the appointee by the will of the life tenant required that the trustee hold the legal estate until it was ascertained that there was default of appointment."

Referring to the argument of the counsel for appellants, he says:

"While there are authorities elsewhere that a simple direction to 'convey' in a trust fully and plainly declared does not make the trust executory, the authorities in this state warrant the conclusion that the duty to 'convey' in a case like this will prevent the execution of the trust in the remainderman * * * until after the death of the life tenant."

He cites several cases—

"which recognize the duty to convey as an active duty, requiring that the legal title shall remain in the trustee, at least, for the performance of the duty to convey the fee upon the termination of the life estate. It may be conceded that the statute executed the use * * * in the life tenant, and his equitable estate was thereby, immediately on the execution of deed, transformed into a legal estate for life with general power of appointment by will, but it was necessary for the fee to remain in the trustee to execute the trust, dependent on the contingency of the life tenant designating the beneficiary by his will. As the trust would be executory under the statute of uses, we see no good reason for holding it not executory when considering the application of the rule in Shelley's Case."

He concedes that the case of Cushing v. Blake, 30 N. J. Eq. 689, cited by counsel for appellants, strongly supports their contention, and says:

"But in New Jersey, as well as in some other jurisdictions, it is held that the duty of the trustee to convey is not sufficient to render the trust executory in the true sense; whereas, in this state, such duty is regarded as active and executory, and the trend of our cases is to regard that which is executory under the statute as executory when considering the applicability of the rule in Shelley's Case. Further, in order for the rule in Shelley's Case to apply, the estate for life and the estate in remainder must be of the same quality, both legal or equitable; otherwise they cannot coalesce. Our cases show that the statute may execute the use in either the life tenant for life, or the remainderman in remainder, according as it may be determined whether the trustee has any active duty to perform with respect to either, rendering it necessary that the life estate shall remain in the trustee."

.The Chief Justice reaches the conclusion that:

"The trustee having no duty to perform with respect to the life tenant in this case, immediately on the execution of the deed the equitable estate of the life tenant becomes legal by the 'potential magic' of the statute, but it being necessary for the trustee to retain the legal fee in remainder during the lifetime of the life tenant to carry out the purpose of the trust, the estate in remainder, not being executed, remained executory and equitable; hence the rule in Shelley's Case could not apply when the deed was delivered because of the difference in the quality of the two estates. If we consider whether the rule should apply on the death of the life tenant without exercising the power of appointment, and should hold that the statute then executed the use in those who answered the description of the heirs at law of John G. Steele, it would only follow that such heirs then became vested with the fee in remainder as a legal estate, which had not previously coalesced with the estate for life, and could not then coalesce with an extinct estate. In such case the intention of the settlor is not defeated by the rule, but those answering the description of heirs of John G. Steele at his death take, not by inheritance

from the ancestor, but as purchasers under the grant of John Steele, Sr., in accordance with the manifest intention of the grantor."

Several decisions of the Supreme Court of South Carolina, made prior to and since August 3, 1868, are cited in support of the conclusion reached by the court. It is, we think, manifest that, with one exception to be hereafter noted, the court in Steele v. Smith, decided every question raised and argued before us in this appeal. If the decision had been rendered before the rights of appellant, under the deed of John G. Steele to James Pagan, August, 3, 1868, accrued, we should not find it necessary, being controlled by the second resolution in Kuhn v. Fairmount Coal Co., supra, to further discuss the assignments of error, notwithstanding the very "keen and forceful," able, and interesting argument of the learned counsel for appellant. We should deem it our duty, as this court did, in regard to the decision of the Supreme Court of West Virginia, in Kuhn v. Fairmount Coal Co., 179 Fed. 191, 102 C. C. A. 457, 66 W. Va. 711, to regard the decision as the "law of the state," applicable to and controlling the rights of the parties in this appeal.

For the purpose of avoiding this result, the learned counsel for appellant vigorously insist that the decision is not in accordance with principle or authority, that it is erroneous in its conclusion, and that either it is in conflict with the decisions of the Supreme Court of South Carolina, made prior to August 3, 1868, or that there were no authoritative decisions of that court prior to that date, upon the questions involved in this case—that they are res integra and that, therefore, this court must, in reaching its conclusion, exercise its independent judgment. The special master, in a very able and carefully considered report, reached the conclusion that the judgment in Steele v. Smith was correct and that the decisions cited were "ample to sustain the conclusion not merely of the present, but of the pre-existent, rule of property in South Carolina." The learned District Judge, after a careful consideration of the questions involved and review of the authorities, came to the conclusion that:

"While he was doubtful of the conclusion reached by the Supreme Court of South Carolina, in its construction of this will [deed], and might, if the case were res integra, reach a different conclusion, yet the court finds that it cannot be said that the conclusion reached by the Supreme Court of South Carolina, in its construction of this will [deed] is clearly at variance with the announcement as to the law made by the courts of highest jurisdiction in South Carolina prior to 1868, and it is therefore the duty of this court, when the question is doubtful, to lean to an agreement with the state court for the sake of comity and to avoid confusion"—citing Brine v. Insurance Co., supra.

Appellant draws into controversy almost every essential element in this conclusion and the process by which it is reached by the District Judge. The case has been twice argued in this court and a number of elaborate and exhaustive briefs filed by counsel. The value of the property, together with the improvements put upon it, is large, and the questions upon which the rights of the parties depend are, as said by the District Judge, not free from doubt, either in respect to the extent to which we are authorized to deal with them, as res in-

tegra, or their solution, if open to us. As said by Mr. Justice Ashe, in Patrick v. Morehead, 85 N. C. 62, 39 Am. Rep. 684:

"There perhaps is no branch of the law that has given rise to more conflicting decisions, or a greater display of legal learning, than the application of the rule in Shelley's Case to the construction of deeds and wills."

The zeal of counsel in this case, evidenced by their very thoroughly considered arguments and exhaustive briefs and the decision in the Supreme Court of South Carolina, followed by a petition for rehearing, recall the sharp and long drawn out controversy in Perrin v. Blake, which Lord Campbell says "divided the profession of the law into bitter factions for many years and which is still famous in the traditions of Westminster Hall," and which before the conclusion of the war of pamphlets waged around it drew such eminent judges and authors as Lord Mansfield and Mr. Fearne into an acrimonious controversy. Campbell's Chief Justices, vol. 3, p. 329.

The learned counsel for appellant strongly insist that, until the decision of Steele v. Smith, it was never held for law in South Carolina that the duty imposed upon a trustee to "convey" the legal estate, in the absence of any other duty, or of inability on the part of the cestui que trust to take and hold the legal title, such as a feme covert, or other disability, created an executory trust. Counsel for the appellee, with equal confidence, insist that the decision in Steele v. Smith is sustained by the current of authority in that state.

As we have seen, the learned District Judge was in doubt in respect to the state of the law. It is clear that, in Steele v. Smith, the court held that the duty imposed upon the trustee, to convey the legal title to the appointee of the life tenant, or upon his failure to exercise the power of appointment to his heirs, created an executory trust, and that the legal title remained in the trustee, for the purpose of enabling him to convey it to those who were entitled in remainder, upon failure of the life tenant to exercise the power of appointment. It is equally certain that the court intended to decide the question in accordance with what it construed to be the law of the state as declared by former decisions of that court—that it did not intend to or suppose that it was declaring a new rule of property in South Carolina, in regard to the distinction between executory and executed trusts or the application of the rule in Shelley's Case to such cases. This, however, does not relieve us of the duty, in disposing of this appeal, to examine the former decisions of that court.

The first proposition upon which the contention of the appellee is based is that, by the decisions of the South Carolina court prior to and since August 3, 1868, it is held that, when by the terms of the deed creating the trust the duty was imposed upon the trustee to hold and to convey the legal title to the cestui que trust, either for life or in remainder, the statute of uses did not execute the use and that the legal title remained in the trustee. It appears, from a careful examination of the cases decided by that court, that it recognizes and enforces the rule that, when by the express terms of the deed, or will, or by reasonable implication from its language, the intention of the maker

appears that the trustee has something to do, some duty to perform, with respect to the property, or the title, the trust is executory. When the trustee is to hold for the use and benefit of a feme covert, certainly prior to the radical changes in the law, enlarging her power in regard to her separate estate, or to preserve contingent remainders, or to exercise a discretion in regard to the use of the property or to the ultimate conveyance of the title, there is but little difficulty in applying the test. While it would extend this discussion beyond proper limits to set forth, at length, the facts and discussion by the court in each case, yet, on account of the insistence, with manifest confidence, of divergent opinion of counsel, and of language used in some of the opinions of the Supreme Court of South Carolina, we ·deem it proper to analyze some of the cases cited by counsel.

The first in order of time is Wilson v. Cheshire, 1 McCord's Eq. (S. C.) 233 (1826). The language of the deed creating the trust in that case clearly imposed duties upon the trustee. The trust was executory and the legal title remained in the trustee. The court said that:

"Where the trustee was required to act, and not merely to hold the estate, * * * the use is not executed, and when, therefore, there is a conveyance to trustees in trust *to convey* [italics ours], or to sell, or to pay the profits. to a feme covert, * * * the legal estate remains in the trustees, unexecuted by the statute."

In Posey v. Cook, 1 Hill's Law (S. C.) 413 (1833), duties were imposed upon the trustee which required that the legal title remain in him. He was to hold the title until the youngest of the cestui que trustent arrived at full age, with a provision to meet certain contingencies, which might happen prior to that period. When the youngest child arrived at full age, the land was to be equally divided between the persons named, who were to have and hold their shares in fee. It was held that the trust was executory. Chancellor Harper, after noticing the language of the note to 2 Blackstone, said:

"Perhaps the rule might be more accurately expressed to say that, where the intention is that the estate shall not be executed in the cestui que trust, and any object is to be effected by its remaining in the trustees, then ·it shall not be executed."

Here we find the recognition of two elements preventing the operation of the statute—the intention of the maker of the deed, or will, and the existence of an object to be effected. This language is in harmony with decisions of the courts in other jurisdictions, both English and American. It expresses, accurately, the opinion of a very learned chancellor.

The next case in order is Jenney v. Laurens, 1 Speers' Law (S. C.) 365 (1843), and here counsel for appellant insists is found a departure from the rule as laid down in the other two cases. In that case the trust declared in the will was "to hold to the use and benefit, and to apply the rents, issues, and profits to and for," etc. The court, by Judge Evans, expressed no doubt that under the rule, which distinguished executory from executed trusts, the words "to hold to the use and benefit" did not create an executory trust; the doubt arose upon the duty

imposed "to apply the rents." The justice, writing the opinion, notes two English cases, and says:

"I have quoted these two cases to show that it is not sufficient to prevent, the estate from being executed that there may be something for the trustee to do. I would rather think the rule may be laid down that the trust will be executed, unless the object of creating it would be defeated, as in the cases of trusts for married women, and to preserve contingent remainders, or where the trustee has some discretion to be exercised in relation to the estate or the manner of applying the proceeds."

If the justice had stopped at this point, it would seem that he had adopted a test or rule differing, to some extent, from that announced by the same court in former cases—that it is not sufficient to prevent the "estate" from being executed "that the trustee have something to do," but that the trust would be executed "unless . the object of creating it would be defeated," etc., and in the illustrations which he makes, except in the two specific instances named, the necessity that the trustee have "some discretion to be exercised." He goes on to say, however:

"Or, as said by Chancellor Harper, in Posey v. Cook, 1 Hill's Law (S. C.) 414, there must be some object to be effected by the estate remaining in the trustee."

He reaches the conclusion that "in this case no discretion is to be exercised by the trustee"; hence, the trust was executed. The *point decided* therefore is that the duty to "apply the rents to and for the use of" the cestui que trust did not prevent the operation of the statute, and that, therefore, the trust was executed. We concur with the learned District Judge that "there is some conflict between the reasoning in Jenney v. Laurens and that in the other cases."

Passing, at this time, the next case decided, in order of time, for the purpose of ascertaining the authoritative value which has been given to the reasoning of Judge Evans in Jenney v. Laurens, we proceed to examine the opinion of Mr. Justice McIver in Ayer v. Ritter, 29 S. C. 135, 7 S. E. 53 (1888). After stating the question, he says:

"This question has been considered by this court in several recent cases, and it has been uniformly held 'that the statute will not execute the use as long as there is anything remaining for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him by the trust.'"

After reviewing a number of cases, decided since 1868, and distinguishing several of them, he says:

"The older cases also, with perhaps one exception, recognize the same doctrine."

He proceeds to examine ."the older cases" and says:

"It is true that the case of Jenney v. Laurens, 1 Speers' Law (S. C.) 356, appears to be an exception to the current of authority above cited, for in that case Evans, J., does say" (quoting the language quoted by us herein).

Judge McIver says:

"On turning to that case (Posey v. Cook, 1 Hill's Law [S. C.] 414), it will be seen that Chancellor Harper, after indicating some dissatisfaction with

one of the modes of creating a trust not executed by the statute, laid down in Ramsay v. Marsh, 2 McCord's Law (S. C.) 252, 13 Am. Dec. 717, to wit, 'Where the feoffees to a use were directed to receive the profits and pay them over to the person intended to be benefited,' expresses a preference for the rule laid down in Ramsay v. Marsh, in the following quotation from Lord Hardwicke: 'Where particular things are to be done by the trustees, it is necessary that the estate should remain in them, so long, at least, as those particular purposes require it.' So that it would seem that the authority upon which Judge Evans relies lends support to the view which we have adopted, and has the sanction of the great name of Chancellor Harper. * * * But, even if that case [Jenney v. Laurens] should be regarded as an apparent exception to the rule above stated, we do not think it sufficient to overthrow the numerous cases in which it has been recognized and followed."

While the decision in Ayer v. Ritter was made subsequent to 1868, the language quoted from the opinion is of value in aiding us to ascertain the extent to which the language used by Judge Evans in Jenney v. Laurens, was regarded by Judge McIver as correctly expressing the rule or test applied by the court of South Carolina.

In McCaw v. Galbraith, 7 Rich. (S. C.) 74 (1853), the legal title was devised to the trustee to hold for the use of the testator's brother, an alien, until he should become naturalized, and then to execute to him a conveyance of the land; the rents and profits to go to the brother from the death of the testator. The alien was not entitled to take the legal title. The court, after noting the fact that more indulgence is extended to wills than to deeds, in ascertaining the intention, states the controlling principle by which the instrument will be construed:

"Where he simply gives to one in trust for another, or to one in trust to permit another to take the profits, or otherwise uses technical terms, whose sense is well fixed, his words will, without explanation given by himself in the instrument, be understood in their technical sense; but where, by a plain expression, or a necessary implication arising from the duties which he imposes upon the trustee, he shows he intends a legal estate to abide in the trustee, his intention will be respected. * * * The will contains a plain expression of the testator's intention to give to Robert G. McCaw a fee simple in trust; and to give it in such way that the use should not be executed by the statute 27 Henry VIII, c. 10. Not only is there a declaration that the legal estate shall be vested in the trustee, but there is the requirement of an act to be done by him, *the conveyance of the estate in fee* [italics ours], which necessarily presupposes the fee to be in him."

The fact that in that case the court was construing a will does not affect the value to be given the language used in the inquiry which we are now pursuing. It is conceded that the foregoing are the only decisions of the South Carolina Court, rendered prior to 1868, bearing upon the question. The decisions in Bristow v. McCall, 16 S. C. 545, Huckabee v. Newton, 23 S. C. 291, and Bowen v. Humphreys, 24 S. C. 452, subsequent to that date, are cited by Judge McIver in Ayer v. Ritter, supra, as being in harmony with the "older cases." He cites Wieters v. Timmons, 25 S. C. 488, 1 S. E. 1, in which it was held that the trust was executed, the court saying of the trustee:

"He was *not required to convey* [italics ours] such share to the issue, nor to divide the same amongst them, and, there being nothing for him to do, there was no reason why the legal title should remain in him, and hence, by the operation of the statute of uses, it passed" to the cestui que trust. Howard v. Henderson, 18 S. C. 184.

In Huckabee v. Newton, supra (1885), citing and quoting from Bristow v. McCall and McCaw v. Galbraith, it is said:

"In the case before the court there is the requirement of a similar act to be done by the trustee after the death of Lucy, the life tenant. He is *required to convey land to her children* [italics ours], * * * or the children of such as may be dead."

The judge cites Jenney v. Laurens, and, by way of distinguishing it from the instant case, says:

"Here the remainders were contingent, and it was necessary that the legal title should remain in the trustee until the contingency should happen, which was to determine who should take, which being determined, the trustee was directed to convey."

The extent to which the Supreme Court of South Carolina has adhered to the rule that the duty imposed upon the trustee to hold and *convey the legal title* will prevent the operation of the statute is illustrated in Ayer v. Ritter, supra. There Lewis M. Ayer devised to his executors, his Campfield plantation, together with articles of personal property, in trust to apply the income to the support of his son, Zaccheus, and his family, during his natural life, and at his death to convey to William H. Ayer "the said plantation in fee." The action was brought, at law, by William H. Ayer, after the death of the life tenant, for recovery of possession of a part of Campfield. It did not appear that defendant Ritter had any title. He moved for judgment of nonsuit because plaintiff failed to show any conveyance from the executors —trustees—for the land. Plaintiff was nonsuited and appealed. McIver, Justice, as we have seen, reviewed the authorities and discussed the case of Jenney v. Laurens, concluding:

"The trust here was to convey and deliver to the plaintiff the plantation and personal property designed for his benefit, and to perform those duties thus required of them it was necessary that the legal estate should remain in them. Indeed, to say nothing of the case of McCaw v. Galbraith, supra, or of the remark made by Glover, J., in Harley v. Platts [6 Rich. (S. C.) 310], it seems to us that the case of Huckabee v. Newton, supra, is directly in point, and is absolutely conclusive of this case. We do not see how the fact that the remainders in that case were originally contingent, while here the remainder was a vested remainder, can affect the question. Upon the death of the life tenant in that case the remainders were no longer contingent, and there was nothing for the trustee to do but make the conveyance to those who then became entitled, just as here, upon the death of the life tenant, there was nothing for the trustees to do but 'to convey and deliver' to the plaintiff the property to which he then became entitled. It seems to us, therefore, that in any view of the case, while there is much force in the argument of appellant's counsel, the authorities require us to hold that the statute did not execute the use, and the legal title still remains in the trustees."

The case of Uzzell v. Horn, 71 S. C. 426 (1905), 51 S. E. 253, is cited by appellant as approving and following Jenney v. Laurens. In that case plaintiffs sued in an action at law for possession of a tract of land, claiming under a deed in which the land was conveyed to Robert Peel, Sr., to hold for the use and benefit of Robert Peel, Jr., during his life—he was to have the right to take possession and use the land as his own. After his death the trustee was to hold for the use and benefit of his wife, Martha W. Peel for and during the term of her

life and after her death, to hold for any child or children which Robert Peel, Jr., "may have living at the time of his death," to be delivered up to such child or children, and if more than one to be equally divided among them, share and share alike, to hold to them and their heirs forever. In the event the said Robert Peel, Jr., died leaving no child or children, nor the issue of such living at the time of his death, "then and in that event, the said Robert Peel, Sr. (after the death of said Martha W. Peel), shall convey the said tract of land to the brother and sisters of the said Robert Peel, Jr., to be divided equally between them, to have and to hold to their heirs and assigns, free and clear from any trusts," etc. Robert Peel, Jr., died without leaving a child, or the issue thereof. Plaintiffs, children and grandchildren of Robert Peel, Sr., after the death of Martha Peel, brought the action at law against defendant Martha Horn, a daughter of Martha Peel, by her first husband. It appears that Robert Peel, Sr., the trustee, died prior to the bringing of the suit, leaving two sons, Robert Peel, Jr., and William Peel, who survived his brother and was a party plaintiff. Defendants moved for judgment of nonsuit, "on the ground that the plaintiffs had not received a title from the trustee named in the deed of trust." The motion was refused by the circuit judge, who, upon the entire evidence, directed a verdict for plaintiffs. It would seem that the ruling of the court was clearly correct, for that the legal title which vested in John Peel, Sr., trustee, descended to his only son living at the time of his death, William Peel, who was one of the plaintiffs. He was entitled to recover the possession upon his legal title, without regard to the question whether his coplaintiffs, who with himself were entitled to the beneficial interest, could maintain the action. With all deference to the learned Justices of the Supreme Court, it would seem that this fact was sufficient to sustain the ruling of the circuit judge and is substantially so stated in the opinion. The Chief Justice, in the opinion, says:

"This deed shows that the trustee had no services marked out to be performed to the plaintiffs. It looks to us, therefore, that these parties were vested with the title, the uses having been executed by the statute, and the estate vested in the grantes"—citing Jenney v. Laurens, supra, Howard v. Henderson, 18 S. C. 189, and Reeves v. Tappan, 21 S. C. 1.

He also cites Wieters v. Timmons, 25 S. C. 488, 1 S. E. 1, which is distinguished from the other cases by Justice McIver in Ayer v. Ritter, supra. It is quite difficult to reconcile the language quoted from the opinion of the Chief Justice with the language of Judge McIver in Ayer v. Ritter. It is equally difficult to reconcile it with what is said and decided in Steele v. Smith, supra. Neither Jenney v. Laurens nor Uzzell v. Horn are cited in the opinion in Steele v. Smith. Mr. Perry places South Carolina in the class of states in which it is held that the duty imposed upon the trustee to convey the legal title makes the trust executory, citing Garner v. Garner, 1 Desaus. (S. C.) 43 (1795), and Porter v. Doby, supra. 2 Trusts, 370.

In regard to the next proposition, upon which the conclusion in Steele v. Smith is reached, the Chief Justice says:

"Our cases show that the statute may execute the use in either the life tenant for life, or the remainderman in remainder, according as it may be

determined whether the trustee has any active duty to perform with respect to either, rendering it necessary that the life estate or the fee should remain in the trustee. Howard v. Henderson, 18 S. C. 184; Young v. McNeill, 78 S. C. 150, 59 S. E. 986; Breeden v. Moore, 82 S. C. 539, 64 S. E. 604. The trustee having no duty to perform with respect to the life tenant in this case, immediately on the execution of the deed the equitable estate of the life tenant becomes legal by the 'potential magic' of the statute; but, it being necessary for the trustee to retain the legal fee in remainder during the life time of the life tenant to carry out the purpose of the trust, the estate in remainder, not being executed, remained executory and equitable."

It appears to be settled law in South Carolina that:

"When estates are conveyed to trustees for the benefit of parties taking different interests, the statute may execute the use in one and not in the other." Mr. Chief Justice Gary, in Young v. McNeill, supra.

The learned Chief Justice cited Howard v. Henderson, supra, which he says "fully sustains the proposition," and Faber v. Police, 10 S. C. 376, from which he makes liberal quotation, concluding:

"When C. H. Faber devised the land to trustees for the benefit of his son for life, and after his death to his issue living at that time, he thereby created two equitable estates—one for life and the other in contingent remainder. When the statute executed the use in John Lewis Faber, the life tenant, it could not clothe him with the legal title to a larger estate than was conferred upon him by the will."

[2] In Breeden v. Moore, supra, Mr. Justice Woods quotes from the decision in Howard v. Henderson, supra. In that case the devise was to a trustee for the benefit of W. S. H. for life, remainder at his death to Geo. V. H. for life, and at her death to the children, then living, of said W. S. H. and Geo. V. H. "It was held that the statute executed the use as to the life estate." Judge Woods, after quoting the language of the court, in that case, says:

"The same principle was applied conversely in Williman v. Holmes, 4 Rich. Eq. (S. C.) 475, and Wieters v. Timmons, 25 S. C. 488, 1 S. E. * * * These adjudications rest on the rule, of universal application, that a trustee will not be held to take any larger estate than is necessary to enable him to perform the duty imposed by the instrument creating the trust"—citing Ayer v. Ritter, supra; Young v. McNeill, supra.

Our attention is not directed to any decision of the South Carolina court to the contrary, either before or since 1868. We see no reason to doubt that the law of South Carolina is as declared by those decisions. Reading the deed from this viewpoint, the estate would vest in John G. Steele for life, remainder to Joseph A. Steele, in trust to hold and convey to such person as the said John G. Steele may by will appoint, and in default of such appointment to convey to the heirs of said John G. Steele, in fee. The conclusion reached by the court upon this condition of the title is thus stated:

"Hence the rule in Shelley's Case could not apply when the deed was delivered because of the difference in the quality of the two estates."

It is, we think, settled as a rule of universal application that, while the rule in Shelley's Case applies to equitable as well as to legal estates, it does so only when both the life estate and the remainder are of the same quality.

"The legal effect of the union of the estates, as declared by that rule, does not occur where the life estate is of an equitable character and the remainder is a legal estate, or vice versa. Both estates must be of the same character." Green v. Green, 23 Wall. 486, 23 L. Ed. 75.

This case affords an interesting illustration of the application of the principle. There a conveyance was made to trustees for the sole and separate use of C., a feme covert, for her life, and to hold and convey the premises to such persons as the life tenant might, by her last will and testament, direct, and, upon failure of the life tenant to appoint by will, to her heirs at law. The trustee and the life tenant joined in a deed of trust in fee to secure the payment of a note. The question presented for decision was whether the life tenant could appoint the fee otherwise than by will, and whether, under the rule in Shelley's Case, she was invested with the fee, which passed by her deed. The court, by Mr. Justice Hunt, held that the estate which vested in her for life was equitable, whereas the estate limited over to her heirs, in default of an execution of the power of appointment by will, to which mode she was restricted, was legal, and therefore the two estates did not coalesce and vest the fee in her under the rule in Shelley's Case. Of course, the converse of the proposition is true; hence, we find it is held:

"If the estate given to a person be a legal estate for life, with a limitation of an equitable estate to his heirs, they will not incorporate into an estate of inheritance in the first taker." Crosby v. Davis, 2 Clark (Pa.) 408; Venables v. Morris, 7 Term Rep. 342.

[3, 4] An examination of a large number of decided cases shows that, in very many of them, when the rule in Shelley's Case was not permitted to operate, the life estate was by reason of the character of the trusts declared equitable, and the remainder legal. This result would probably have followed in Steele v. Smith, except for the holding that, by reason of the duty imposed upon the trustee to convey to the appointee, or, in default of appointment, to the heirs, of John G. Steele, the trust, quoad the remaindermen, was executory, and herein the law of South Carolina, as declared by the Supreme Court, differs from that of some other jurisdictions. If, as held in Steele v. Smith, the statute of uses operates to execute the use, and thereby vests the legal title in John G. Steele for life, and the duty imposed upon the trustee to hold and convey the property to the appointee by will of John G. Steele, or in default of such appointment, to convey to his heirs in fee, is an executory trust as to the fee, the conclusion reached in that case is logical and in accordance with well settled legal principles. If this was an action at law for the recovery of possession, the plaintiffs would encounter the same difficulty which prevented a recovery in Ayer v. Ritter, supra, unless, under the authority of Uzzell v. Horn, supra, the legal title, which remained outstanding in Joseph A. Steele, descended to his son, John G. Steele, and from him to the plaintiff, John Atkinson Steele, the eldest son of John G. Steele, who is a party to this record. However this may be, the proceeding for partition, when removed into the federal court, was properly trans-

ferred to the equity calendar. To meet this suggestion, the Chief Justice, in Steele v. Smith, says:

"If we consider whether the rule should apply on the death of the life tenant without exercising the power of appointment, and should hold that the statute then executed the use in those who then answered the description of the heirs at law of John G. Steele, it would only follow that such heirs then became vested with the fee in remainder as a legal estate which had not previously coalesced with * * * an extinct estate."

In conclusion he says that:

"In this way the intention of the grantor is not defeated by the rule, but those answering the description of the heirs of John G. Steele, at his death, take, not by inheritance from the ancestor, but as purchasers under the grant of John Steele, Sr., in accordance with the manifest intention of the grantor."

The court was impressed with the conviction that it was the intention of John Steele, Sr., to make a settlement of his property through the medium of a trustee, by giving the land to the trustee to hold for the life of the son, with a restricted power of appointment, vesting in the trustee the legal title to be conveyed by him to the appointee, and upon failure thereof to convey to the heirs of the son— using the word "heirs" as descriptio personarum. The language used in the deed, indicates that the draftsman was a lawyer who understood that the trust created was executory, or at least so held by the court in South Carolina. That courts of equity, having sole cognizance of the interpretation and administration of executory trusts, have regard to, and effectuate, the intention of the maker of the instrument, is well settled. Mr. Justice Hunt in Green v. Green, supra, says:

"There is a distinction between a trust in equity and a mere legal estate, and that in the latter class the words must be taken as they stand according to their legal determination, while a different rule prevailed in regard to trusts. * * * Trusts are the mere creatures of confidence between party and party, totally distinct in almost every quality from those legal estates which are the subjects of tenure, * * * and therefore not the object of those laws which are founded in the nature of tenure. They are rights arising solely out of the intent of the party who created them, and therefore such intent should be the only guide in the execution of them."

The first inquiry here is whether the decision in Steele v. Smith is a declaration of a rule of property, recognized and in force in South Carolina, when John G. Steele conveyed the land to Pagan. In view of the vigor with which that decision is attacked, we have extended our investigation somewhat into other jurisdictions. The question has been very fully discussed in the notes to Lord Glenorchy v. Bosville, 1 L. C. Eq. 1 (3d Am. Ed. 1). The author of the American note says:

"The distinction between executed and executory trusts here has gone to the extent of arresting the application of the rule in Shelley's Case in regard to executory trusts, and causing the person answering the description of issue, heirs of the body, or heirs to take as purchasers according to the language of the will as it stands. For this purpose, a trust will, in the American courts, be considered as executory, whenever a conveyance is to be made by the trustees, or in case of personal property whenever a delivery is to be made

by the trustees at successive periods of time to the persons respectively entitled under the will or articles."

We are not inadvertent to the fact that the learned editor of the note is referring to executory trusts created by wills or articles of settlement. It is, we think, quite clear that the deed executed by John Steele to Joseph A. Steele was in the nature of a settlement of the property. We are not able to perceive why his intention should not be effectuated, if he has manifested it in the manner recognized by the courts, as it would have been if he had done so by will. It appears that the question received very careful consideration by the court of Georgia. It is said that:

"The principles and distinctions have been accurately defined and established, after great discussion by that court."

In Edmondson v. Dyson, 2 Ga. (2 Kelly) 307, it appears that Mrs. R. devised her estate to D. in trust for the sole and exclusive use of her husband during his life, and directed that at his death the trustee should convey the property to such persons as her husband should be willing to appoint, and if he should die intestate then the trustee should convey the property to the heir or heirs at law of the husband absolutely. The husband died intestate and the question was whether the child of the husband took as purchaser under the will, or whether the whole estate vested in the husband, and his child took as his heir, in the regular course of the law. The case was admitted to depend entirely upon the question whether the trust was executory or executed. The Supreme Court held that the trust was executory on the ground that a conveyance was to be made by the trustee. In the discussion, Mr. Justice Nisbet declared the rule in Shelley's Case to be an established principle of law in Georgia but that it applies to legal estates and executed trusts and does not apply to executory trusts when the testator plainly implies an intention that it shall not apply. He says:

"It is argued with great force that if the limitations are perfect, if the character of the estates is ascertained, the trust is executed; that the something left to be done has no reference to any mere act of conveyancing which might be necessary to effectuate limitations which the testator has fully declared, but the trust is executory only where the limitations themselves are not defined, where the estates are not ascertained, and in cases where the testator only leaves loose statements, or notes of his intention, requiring careful and responsible deeds, or other instruments, to be by the trustee executed, which in themselves create and define estates, or which require a decree of chancery to mould the estates according to such loose memoranda; that it is immaterial whether the limitations are legal or equitable; that is whether the estate * * * may be asserted at law, or a decree in chancery be necessary to its perfect enjoyment, if the limitations are complete, and there is no doubt about the quantity or quality of the estate. I do not deny, but upon principle it is hard to escape from, the conclusiveness of this reasoning. It is difficult to see any reason why an estate to A. in trust to B. for life with remainder to the heirs of B. is an executed trust, and an estate to A. in trust to B. for life with remainder in fee *to be conveyed to the heirs of B.* is an executory trust. In both cases the intention of the testator is the same; the estates limited are the same. The only difference is found in the fact that * * * the testator is his own conveyancer, and the heirs take directly, and in the second he makes his trustee his conveyancer, and the heirs take

through his deed. The thing to be done in the last case, to wit, convey, neither restricts nor enlarges the estate to the heirs. And yet the authorities, as we shall see, make this very act of *conveyancing*, the test, or one of the principal tests, of an executory trust."

The learned judge concludes his very exhaustive examination of the authorities, saying:

"I have not found, in the laborious investigation which I have been compelled to give this subject, a single case where a conveyance was required to be made, however merely formal it might appear to be, which has been determined to be an executed trust."

In discussing the questions presented in that case, and involved in this appeal, he says:

"The questions * * * involve the application or not to that instrument [the will of Mrs. Rakestraw] of the celebrated rule of property, known to the profession as the rule in Shelley's Case, and the intricate and greatly vexed inquiry: What is an executory in contradistinction to an executed trust? These inquiries are among, if not the most, abstruse, complicated, and least understood of all that belong to a science abounding in subtle distinctions. The most brilliant genius, the most profound learning, and the most patient and continuous labour, have been for centuries applied to their elucidation, with no very decidedly satisfactory result."

He reached the conclusion, concurred in by all of the judges, that the husband took only a life estate, and his daughter, who was his heir at law, took as a purchaser in remainder. The opinion is both interesting and enlightening. We have not quoted the language used by Judge Nisbet for the purpose of expressing either concurrence with, or dissent from, the conclusion reached, nor for the purpose of invoking it in aid of the conclusion reached by the Supreme Court of South Carolina. We do not doubt that the case of Steele v. Smith received the careful and anxious consideration of that court. This is no less our duty than our conviction.

[5] If it be conceded that no case exactly on all fours with Steele v. Smith was decided by the South Carolina Supreme Court prior to 1868, which are authoritative declarations of the law of the state, it becomes our duty to ascertain to what extent we should, "for the sake of comity and to avoid confusion, lean to an agreement with the state court," assuming that the "question is balanced with doubt." This "question" is, not what the law of this case has been declared in other American states, or elsewhere, but what is the law of the state of South Carolina. In Kuhn v. Fairmount Coal Co., supra, the court did not intend to declare any new rule or principle for the guidance of the federal courts, but to formulate and restate the rule theretofore announced, and followed, with respect to the manner in which these courts should deal with questions of local, or state, law in the exercise of their co-ordinate jurisdiction, based upon diversity of citizenship. The language of the court, in several cases, illustrates the extent to which the principle has been applied. In Hinde v. Valtiers' Lessees, 5 Pet. 398, 8 L. Ed. 168, it is said:

"There is no principle better established, or more uniformly adhered to in this court, than that the Circuit Courts, in deciding on titles to real property in the different states, are bound to decide precisely as the state courts ought to do."

So in Olcott v. Bynum, 17 Wall. 44, 21 L. Ed. 570, the question was as to the admissibility in evidence of an unregistered deed, under the North Carolina statute and the adjudications of the Supreme Court of that state. Mr. Justice Swayne said:

"It is to be considered solely in the light of the statutes and adjudications in North Carolina. This court must hold and administer the law upon the subject as if it were sitting as a local court of that state." Slaughter v. Glenn, 98 U. S. 242, 25 L. Ed. 122.

As indicating the authoritative force given to the decision of a case under somewhat similar conditions, Mr. Justice Brewer, in Halsted v. Buster, 140 U. S. 273, 11 Sup. Ct. 782, 35 L. Ed. 484, after stating the question, says:

"This question must be answered in the negative. It might be sufficient to refer to the case of Bryan v. Willard, 21 W. Va. 65. In that case the precise question was before the Supreme Court of Appeals of that state, and decided against those claiming under the Martin grant. * * * The cases are therefore identical. The same points were made and the same questions presented, with one exception, to be hereafter noticed; and as the title to real estate, and the construction of deeds and statutes in respect thereto, is a matter of local law, this court, while exercising an independent jurisdiction, follows as a rule the decision of the highest court of the state."

In a well-considered and amply sustained opinion in Southern Railway Co. v. N. C. Corp. Com. (C. C.) 99 Fed. 165, Judge Simonton reversed his decree, based upon the construction given by him of a North Carolina statute, because, pending the cause in the Circuit Court, and after filing his decree, the Supreme Court of the state placed a different construction upon the statute. In re Floyd & Hayes (E. D. S. C.) 225 Fed. 262, affirmed by Circuit Court of Appeals at this term, 232 Fed. 119, —— C. C. A. ——.

As said by the court in Jackson v. Chew, 12 Wheat. 167, 3 L. Ed. 583:

"This court adopts the state decisions, because they settle the law applicable to the case; and the reasons assigned for this course apply as well to rules of construction growing out of the common law, as the statute law of the state, when applied to the title of lands. And such a course is indispensable, in order to preserve uniformity; otherwise, the peculiar constitution of the judicial tribunals of the states and of the United States, would be productive of the greatest mischief and confusion."

The reasons upon which this well-settled principle is based are strongly stated, and the confusion which would result from a failure to enforce it pointed out by Judge Dayton in Kuhn v. Fairmount Coal Co. (C. C.) 152 Fed. 1013.

[6, 7] Whether the decision of the Supreme Court of South Carolina in Steele v. Smith was the declaration of a rule of property, based upon decisions of that court prior to 1868, and therefore an authoritative declaration of the law of the state at that time, or whether, upon the examination of the decided cases, both before and since 1868, the question is "balanced with doubt," we are constrained "to an agreement with the state court," unless there be some other questions, not considered or settled by the decision of the state court, which should control our decision here. It is strongly urged that such questions are

presented. It is conceded that in South Carolina, upon the death of a trustee, the legal title, subject to the trusts imposed upon the ancestor, vests in his eldest son; that the statute abolishing the law of primogeniture does not apply to estates held in trust. Breeden v. Moore, supra. Therefore, upon the death of Joseph A. Steele, the legal title to the land conveyed to Joseph A. Steele, trustee, descended to and vested in his son, John G. Steele. Appellant contends that this resulted in a merger of the legal and equitable estates in John G. Steele, thereby vesting in him the absolute legal estate in fee discharged of the trust. This position is based upon the doctrine that:

"Where a greater and a less legal estate, held in the same right, meet in the same person, without any intermediate estate, a merger necessarily takes place. The lesser estate ceases to exist, being merged in the greater, which alone remains. * * * Wherever, in like manner, a legal and coextensive equitable estate meet in the same person, in either instance, the equitable estate is merged at law, for the law regards the legal estate as the superior." Pomeroy, Eq. 787.

### Chancellor Kent says:

"If the estates are held in different legal rights, there will be no merger, provided one of the estates be an accession to the other, merely by the act of law, as by marriage, by descent, by executorship or intestacy. * * * At law, the doctrine of merger will operate, even though one of the estates be held in trust and the other beneficially, by the same person, or on the same or different trusts. But a court of equity will interpose and support the interests of the cestui que trust, and not suffer the trust to merge in the legal estate, if the justice of the case require it." 4 Kent, 101.

In an able and exhaustive discussion of the subject, containing a careful review of the decisions of the Supreme Court of South Carolina, upon the subject of merger of estates, Mr. Justice Woods, in McCreary v. Coggeshall, 74 S. C. 42, 53 S. E. 978, 7 L. R. A. (N. S.) 433, 7 Ann. Cas. 693, says:

"We think it clear the later cases in this state establish the proposition, which as we have seen is in accord with the doctrine universally recognized in other jurisdictions, that in equity at least merger will not take place if opposed to the intention of the parties, affirmatively proved or to be implied from the fact that merger would be opposed to the interest of the person in whom the different estates or interests become united."

Judge Woods, in answer to the contention that, in enforcing the doctrine of merger, courts of law took no account of the intention of the parties, that this was only done by courts of equity, says:

"We conclude there is not controlling authority that the intention is not to be regarded in an issue of law, or as to legal estates, but on the contrary the tendency of modern authority is to regard the intention controlling at law as well as in equity. There is certainly no reason to be found for any distinction."

The equitable doctrine has superseded the legal. 20 Am. & Eng. Enc. 591.

"Where the purpose for which the trust was created required the legal estate to remain distinct, equity will require the carrying into effect of this purpose and prevent merger." 39 Cyc. 246.

Mr. Hill, after defining the doctrine of merger of estates, at law, says:

"In such cases, however, equity will interpose, and will preserve the equitable interests from destruction, either by decreeing possession to the cestui que trust, during the period of the estate so merged, or by decreeing a conveyance to revive the legal estate." Hill, Trustees, § 252.

Mr. Perry says:

"If A. should convey lands to B. in trust for C. and her heirs, and C. should be the heir of B., upon the death of B. the legal title would descend to C., and thus both the legal and equitable title would meet in C.; but if C. was a married woman, and it was plainly the intention of the grantor or settlor, to be gathered from the whole instrument, that the trust should not cease, but continue an active trust, the court would not allow the equitable estate to merge in the legal, but a new trustee would be appointed to take the legal title." Perry on Trusts, § 347; Donalds v. Plum, 8 Conn. 447.

In Thorm v. Newman, 3 Swans, 603 (36 Eng. Rep. Reprint, 991), Lord Nottingham, in reply to the contention that, upon the facts before him, there was a merger, said:

"Whatever the law may be, it ought to be no merger in equity."

In Hunt v. Hunt, 14 Pick. (31 Mass.) 374, 384, 25 Am. Dec. 400, Shaw, Chief Justice, said:

"In order to effect a merger at law, the right previously existing in an individual, and the right subsequently acquired, in order to coalesce and merge, must be precisely coextensive, must be acquired and held in the same right, and there must be no right outstanding in a third person, to intervene between the right held, and the right acquired. If any of these requisites are wanting, the two rights do not merge, but both may well stand together."

In Donalds v. Plum, supra, the court, citing Phillips v. Brydges, 3 Ves. Jr. 126, said:

"The legal and equitable estates must be coextensive, be commensurate, or there must be the same estate in law as in equity. A court of equity will always prevent a merger to preserve any beneficial interest of the parties, to promote the purposes of justice, or effect the intention of the donor. Such equitable estates are to be held perfectly distinct and separate from the legal."

A careful examination of the opinion in Wills v. Cooper, 25 N. J. Law, 137, relied upon by appellant, does not disclose any divergence from the current of authority in regard to the doctrine of merger and its application. The learned judge quotes with approval the language found in Hill on Trustees, 252. He says:

"Here the legal estate cast upon R. by descent was undoubtedly broad enough to cover his equitable interest; and * * * his equitable beneficial interest and the absolute legal estate which he took by the descent clear of the trust were precisely coextensive and commensurate"

—clearly recognizing the essential requisites to a merger of estates. No rights of third parties, either legal or equitable, intervened.

In Mangum v. Piester, 16 S. C. 317, both estates were legal; hence the lesser merged into the larger, when vested in the same person. In Lipscomb v. Goode, 57 S. C. 182, 35 S. E. 493, the court would not

permit a merger because to do so would destroy the rights of a third party. Here Joseph A. Steele held the legal title in trust to convey to such person as, according to the terms of the deed, upon the death of John G. Steele, were entitled to call for its conveyance. The legal title, with this executory trust impressed upon it, vested in John G. Steele, by operation of law. It is said, however, that he could not hold as trustee for himself, or execute the trust. It is the peculiar office of a court of equity to prevent the failure of an executory trust, effectuate the intention of the person who created it, and preserve the rights of the cestui que trust. When it is ascertained that a valid trust has been created, the court enforces it according to the intention of the maker, and, if for any reason the trustee named cannot execute it, or if no trustee be named, appoints a trustee, and so molds its decree that the rights of the beneficial owners are preserved. The maxim of equity that "a trust shall never fail for want of trustee" is elementary. In this case, as upon the death of John G. Steele, without having exercised the power of appointment, the plaintiffs are entitled, under the terms of the deed, to both the legal and equitable title, we see no reason why, as was held by the Supreme Court in Steele v. Smith, the intention of John Steele should not be effectuated by treating them as the owners in fee of the one-half undivided interest in the land. If there was no merger of the legal and equitable title by reason of the descent of the legal title upon John G. Steele, the legal and equitable estates remained separate and distinct, and upon his death the legal title, in the same plight, descended to his eldest son. If the trust is not executed in the plaintiffs, upon the death of John G. Steele, it vested in his son, John A. Steele, who is a party to this record and represents the legal title. With the other appellees, every person who, under any possible aspect, can have any interest in or title, either legal or equitable, to the land, are in the record, and will be bound by the decree.

[8] Appellant insists that, when John G. Steele executed a deed to Pagan, sufficient in form, and with warranty, for a valuable consideration, to convey the fee, he extinguished the power to appoint the estate by will— "that he was estopped from thereafter exercising, by will, the power of appointment." If it be conceded that this contention is sound, we do not perceive how it affects the rights of appellees. It may be that if, after executing the deed to Pagan, he had executed a will appointing the estate, the contingent remainder would have been destroyed, and, further that his appointee may have been decreed to hold the legal title in trust for Pagan. These questions, however interesting, are entirely academic here, because there are no facts to make them of practical interest. Counsel frankly concede that the deed to Pagan was not a valid execution of the power—it could have no other legal effect than to vest in Pagan the life estate of John G. Steele. In the case which the record presents, so far as the rights of the appellees are concerned, John G. Steele simply failed to exercise the power of appointment. In that respect it is on all fours with Edmondson v. Dyson, supra. The opinion of Judge Nisbet, in dealing with this aspect of the case, is interesting. Referring to the fail-

ure of the husband of Mrs. R. to exercise the power to appoint the fee by will, he says:

"He died intestate, and of course without having exercised the power. The power, therefore, falls to the ground, or rather it is as though it had never been, or as a void power. He had the ability, during life, to defeat the remainder to his heirs at law, by appointing the fee to convey to others. Not having done so, the property takes just that direction which the testatrix, anticipating such a contingency, willed it to take. By the provisions then of the will itself, upon the death of G. L. R., intestate, the power of appointment becomes a nullity, for she further directs the trustee, upon his death intestate, to convey the property absolutely to his heirs at law. * * * We therefore abstract it, for the future, wholly from the will, except in so far as the clause in relation to it may be used as an indicium of intention."

The learned and resourceful counsel for appellant draws the conclusion that, by conveying the fee to Pagan, John G. Steele extinguished the power—that is, as he puts it, estopped himself from exercising it—and therefore the case "must be considered just as though the power of appointment had never existed, and being considered in this light it must be held that the deed conveyed a fee simple." Without pausing to examine the validity of the proposition that the execution of the deed to Pagan extinguished the power, we are unable to adopt the conclusion reached by counsel assuming the premise to be correct. We do not think that, by attempting to execute the power in an unauthorized manner, he could destroy the rights of the remaindermen, or bring about any other result than a failure to exercise it would do.

Without further extending the discussion, leaning to an agreement with the decisions of the Supreme Court of South Carolina, as declaring the law of the state, in respect to the character of the trust created by the deed, and the construction given to it, we conclude that, when the deed of John Steele was delivered, an executory trust was created and imposed upon the legal title, that the trustee was required to hold the legal title in fee for the purpose of effectuating the trusts declared, and that, upon the death of John G. Steele intestate, appellants, his widow and children, being his heirs, were entitled to a conveyance of the fee. The other questions argued in this court were not discussed or specifically decided, because so far as appears they were not raised by counsel in Steele v. Smith. We therefore pro hac vice treated them as open for our consideration. An examination of the authorities cited in the briefs brings us to the conclusion that there was no merger of the legal and equitable estates in John G. Steele upon the death of his father, Joseph A. Steele, and that the execution of the deed to Pagan did not affect the rights of the appellees. While we have, at probably greater length than was necessary, discussed the several phases of the case presented upon the argument, we are of the opinion that the controlling factor is found in the character of the trust created by the deed executed by John Steele to Joseph A. Steele. When it is found, by adopting the South Carolina decisions, that it was executory, it follows that a court of equity will, in its interpretation, seek to effectuate the intention of the maker of the deed. Mr. Adams says that a court of equity in enforcing an executory trust will

232 F.—3

.give to the language used its legal meaning, unless an intention to the contrary is found in the instrument, and that:

"The intention so to modify them may be collected from slighter indications than would be sufficient, if an executed one, e. g. * * * from an express limitation to the first taker for life followed by a remainder to the heirs of his body." Ad. Eq. 42.

The editor of the third Am. edition cites Garner v. Garner, 1 Desaus. (S. C.) 444. See, also, Patrick v. Morehead, 85 N C. 62, 39 Am. Rep. 684.

[9-13] It appears, from the cross-bill filed by appellant, that the original tract, one-half of which was conveyed in trust, has been divided and subdivided, and that certain conveyances have been made between those holding fractional parts, under some of whom appellant claims. Eliminating a number of complications not relevant to this controversy, it appears that Wilson and Smith and Watson became the owners of an undivided interest in 99 acres of the original tract. They made partition of this portion of the land between themselves, by executing deeds of exchange, and by this arrangement that part known as "tract A," 27 acres, was conveyed to Smith and Wilson, and the other tracts to Watson. The 27 acres, by successive conveyances, came to appellant and is the subject-matter of this controversy. It is conceded by appellees that appellant owns one-half undivided interest in the 27 acres, and they seek to have partition. Of course the partition made between Smith and Wilson and Watson does not affect the rights of appellees; but it is claimed that, in making the partition, appellants are entitled to certain equities, which will be enforced by the court. They are set up in the cross-bill. It is true that, although one tenant in common executes a deed to a stranger to the title, describing and purporting to convey the entire tract by metes and bounds, the deed is effectual to convey only his undivided interest. This does not, in any degree, disturb the rights of the other tenant. This may be regarded as elementary, and is not controverted here. If, however, by reason of the fact that the grantee, in the bona fide belief that he has, by his deed, acquired a good and valid title to the entire tract of land conveyed, places improvements upon it, the court, in its decree directing partition, while preserving the rights of the cotenant, will direct the partition to be so made as to conserve the equities of all parties, both by providing for compensation for the betterments, and, if practicable, and without prejudicing the rights of the other cotenants, directing the allotment of the part upon which improvements have been made to the tenant who made them.

In this case it is difficult to see how the equity invoked can be administered. The parties to this record do not own in common any other land than that described in the bill. To bring into the decree the questions involved in the cross-bill would necessitate making other parties and involve collateral questions which are foreign to those properly cognizable in this cause. The decree protects the interests of appellants in regard to the betterments. With the findings of the special master, upon which the decree is made, we do not find any just cause of complaint, in respect to the method directed of making partition.

The appellees' right to have partition is not barred by the statute of limitations. The refusal to permit an amendment to the cross-bill was a matter of discretion in the District Court, nor do we perceive any necessity for the cross-bill. The rights of the parties are protected by the decree in the original bill. Upon a careful consideration of the record, we do not find any error.

The decree is affirmed.

PRITCHARD, Circuit Judge (concurring). I am of opinion that the question whether a rule of property in South Carolina decisive of this case was established prior to 1868 is balanced in doubt; therefore in pursuance of the principle announced by the Supreme Court of the United States in the case of Kuhn v. Fairmount Coal Company, 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, I concur in following the decision of the Supreme Court of South Carolina in the case of Steele v. Smith, 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939.