CULLEN v. ARMSTRONG et al.

(District Court, D. Maryland. December 20, 1913.)

1. LOGS AND LOGGING (§ 3*)—RIGHT TO CUT TIMBER—CONVEYANCE—NATURE OF PROPERTY.

In Maryland the right to cut timber from land is personal property and may be sold as goods, wares, and merchandise.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—TIMBER—TRANSFER.

Where defendant, having a bill of sale conveying the right to cut timber from certain land, transferred the same to a bankrupt, with the bill of sale, receiving the latter's notes for the purchase price, this was sufficient to transfer his title to the timber as between the parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

3. BANKRUPTCY (§ 188*) — PROPERTY PURCHASED BY BANKRUPT — LIEN FOR PRICE—SUSPENSION.

Where defendant transferred his right to cut timber from certain land to a bankrupt accepting its notes for the price, the notes and renewal thereof suspended his right to enforce his lien on the timber for nonpayment of the price until the notes were due or the bankrupt's inability to pay them became manifest.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

4. LOGS AND LOGGING (§ 3*)—PRICE—ACCEPTANCE OF NOTES—TERMINATION OF LIEN.

That a seller receives the buyer's notes for the price of timber and negotiates the same does not terminate the seller's lien.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. BANKRUPTCY (§ 188*) — LIEN—WAIVER — ENFORCEMENT AGAINST BUYER'S
   TRUSTEE.

Defendant A., having purchased the right to cut timber from certain
land for $6,250, resold the same to a bankrupt for $8,500, taking its notes
therefor. The notes were renewed from time to time until the bankrupt
became unable to pay them, after having unsuccessfully attempted to dis-
pose of the rights to third persons. The bankrupt never took possession of
the rights transferred, nor did he notify the landowner of his interest,
or do anything except send certain prospective purchasers to look over
the timber. No sale, however, was made, and thereafter the bankrupt
retransferred the rights to A. in settlement of the notes while it was in-
solvent. *Held*, that there had been no waiver or loss of A.'s lien upon
the rights transferred to secure payment of the price, and, it not appear-
ing that the timber rights were worth more than $8,500, A. was entitled
to retain the same as against the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289,
291–295; Dec. Dig. § 188.*]

In Equity. Action by Charles W. Cullen, as trustee in bankruptcy,
against Daniel C. Armstrong and another. On application to set aside
a preliminary injunction. Application granted, and bill dismissed on
condition.

Stevenson A. Williams, of Belair, Md., for complainant.

Alonzo L. Miles and Morris A. Soper, both of Baltimore, Md., for
defendants.

ROSE, District Judge. The plaintiff is the trustee in bankruptcy
of the Delmar Lumber Manufacturing Company, a Delaware corpora-
tion. He will be called the trustee; it, the bankrupt. He seeks to set
aside a transfer by the bankrupt to the defendant Armstrong of a right
to cut timber on a tract of land in Somerset county in this state. He
says that the transaction assailed was a voidable preference. Bounds,
the other defendant, now claims to be the owner of the timber leave
in question. The trustee says that as against him Bounds has acquired
no rights therein. In January, 1911, the land and the timber thereon
belonged to a Mrs. Anderson. For $6,250 she sold this timber leave to
Armstrong. She gave him a bill of sale therefor. It was duly re-
corded. On November 15, 1911, he resold it to the bankrupt for
$8,500. No cash passed. The bankrupt gave Armstrong its three
promissory notes. Two of these were for $1,250 each. They were re-
spectively payable 30 and 60 days after date. The third note was at
four months and was for $6,000 and interest. Four of the bankrupt's
directors individually indorsed each of the notes. It and they were
then in good credit. Some of them were supposed to be well to do.
In return for the notes Armstrong handed over to the bankrupt the
original bill of sale from Mrs. Anderson to him. He prepared an-
other paper and delivered it also. What that instrument was is one
of the disputed questions in the case. Armstrong's counsel claim
that it was a reservation of title in the timber until the purchase money
was paid, or at all events until both the $1,250 notes were. The trustee
contends that it was an out and out assignment of the bill of sale. It
was never recorded. Armstrong subsequently, under circumstances

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

209 F.—45

to be described, obtained possession of it. He lost or destroyed it. He does not pretend to be able to tell how it was worded. He has been more than once examined concerning it. With each repetition his recollection that it in some way reserved title becomes clearer. The evidence does not justify a finding that there was any such reservation made by it. The trustee, on the other hand, is equally unable to prove that it was an assignment of the bill of sale. As the record stands, the case must be disposed of as it would have been had no such paper ever existed.

Armstrong discounted the three notes at the Bank of Somerset. When the first of them fell due, the bankrupt induced Armstrong to consent to its renewal. As each of the others matured, the same thing happened. Some of the earlier renewals again matured and were again renewed. The renewals all bore the same indorsements as the originals. By early June, 1912, the financial condition of the bankrupt and its indorsers had become bad. On June 10th a suit for upwards of $4,000 of undisputed indebtedness was brought against it and them. Within the next ten days other suits followed. As early as June 18th an application to put it in the hands of a receiver was made to the state court for Sussex county. On the 21st the application was granted. On July 11th an involuntary petition in bankruptcy was filed. In due course adjudication followed. Two of the four indorsers were likewise adjudicated. Another died while bankruptcy proceedings were pending against him. The property of the fourth was sold upon execution issued against him.

The bankrupt never took physical possession of the timber or of the land upon which it stood or of any part of either. It never made any preparation to fell any of the trees. It never notified the owner of the soil that it had succeeded to Armstrong's rights. All that it did to which plaintiff can now refer as acts of ownership was to send a couple of possible purchasers to look at the timber in the hope that they would become buyers.

On June 14th or 15th the bankrupt, acting through two of the indorsers, agreed with Armstrong to rescind the sale. None of the bankrupt's renewed notes matured before July 15th. On that day all of them would become due. Armstrong signed a note for $8,620. Bounds indorsed it as surety. The Bank of Somerset discounted it. Out of the proceeds Armstrong took up the notes of the bankrupt. He returned them to the bankrupt with his check for unearned interest. The bankrupt gave him back the bill of sale and the other paper. The parties had put each other in the situation in which they were before the sale was made. Armstrong now says that when all this was done he neither knew that the bankrupt was insolvent nor had he any reasonable cause to believe that such was the case. Actions speak louder than words. He did precisely what any one in his place would have done had be believed that the bankrupt and its indorsers were on the eve of failure. If he did not think so, there was no reason for doing anything until the notes fell due. If he thought that his debtors were insolvent, he must have also had good reason to believe that if he got back the timber he would be better off than the balance of their cred-

itors. His counsel say that, even if for the sake of the argument they admit all that has been thus far said, yet he did nothing which he had not the right to do and nothing which the bankrupt law will avoid.

[1, 2] In Maryland this timber leave is personal property. It is bought and sold as are goods, wares, and merchandise. There is no question that what was done was sufficient as between themselves to pass title from Armstrong to the bankrupt. Was it enough to extinguish the former's lien for the unpaid purchase money under the rules laid down in Thompson v. B. & O. R. R. Co., 28 Md. 406? If the bankrupt had not taken possession of the timber before June 14th, that lien then existed and Armstrong had the right to enforce it.

[3] The acceptance of the notes suspended his right to act upon it until the notes matured or until the bankrupt became insolvent. The acceptance of renewal notes worked a further suspension until they became due or until prior to that time the inability of the bankrupt to pay them became manifest. McElwee v. Metropolitan Lumber Co., 69 Fed. 308, 16 C. C. A. 232.

[4] It is true that in Arnold v. Delano, 4 Cush. (Mass.) 41, 50 Am. Dec. 754, Chief Justice Shaw suggested that the negotiation by the seller of the buyer's note ended the lien. That is no longer the law even of Massachusetts. Brewer Lumber Co. v. Boston & Albany R. R. Co., 179 Mass. 228, 60 N. E. 548, 54 L. R. A. 435, 88 Am. St. Rep. 375. Nor is it the law of the federal courts. McElwee v. Metropolitan Lumber Co., supra. The doctrine of these cases is embodied in the Uniform Sales Act now in force in Maryland.

[5] The plaintiff says the bankrupt had so taken possession of the timber as to extinguish the lien. Had it? If the timber was in the actual custody of the owner of the land, the bankrupt had not taken the steps required by law to get possession. It had never notified the owner of its rights, nor had she ever recognized them or, so far as the record shows, ever heard of them.

The handing over of the original bill of sale may have been a sufficient symbolical or constructive delivery to pass title as between the parties. It is not every such delivery that suffices to destroy the vendor's lien. Thompson v. B. & O. R. R. Co., supra.

The mere sending of one, two, or three people to look at the timber in order, if possible, to get an offer from them, did not change the situation. They went casually on the land and as casually left it. They did not buy. There is no element of estoppel present. It does not appear that any third person ever acted to his hurt upon the supposition that the bankrupt owned the timber. That remained on June 14th precisely as it was on the preceding November 15th. Nothing had happened to it in the meantime. Not one penny had ever been paid for it. We are not embarrassed by any question as to whether on June 14th the bankrupt was insolvent. The assumption that it was is a necessary part of plaintiff's case. When that became manifest, before the bankrupt had in any way reduced the timber into possession, or any one else had acquired any rights in it, the suspension of Armstrong's vendor's lien which had resulted from his accepting renewal notes which did not expire until July 15th came to an end. He had a right to assert

it. The bankrupt was bound to yield to it. It is true that, if there had been an equity in the timber over and above the sum due Armstrong, the trustee would have been entitled to it. I do not understand that anybody claims that there is, or that more than $8,500 could on June 14, 1912, or at any time since, have been obtained for the timber. At all events, Armstrong had a right then to take possession of it, and he has now the right to retain that possession until the purchase price shall be paid him. His rights appear, upon settled principles of law and the terms of the Uniform Sales Act (Code Pub. Gen. Laws Md. 1904, art. 83, §§ 22–98) in force in Maryland, to be superior to those of the trustee.

It follows that the preliminary injunction heretofore granted restraining the removal of timber by the defendants must be dissolved, and the bill of complaint dismissed, unless within ten days the trustee shall signify his intention to tender within a reasonable and short time to the defendants the sum of $8,500, with interest thereon from June 14, 1912.