NORFOLK BANK FOR SAVINGS & TRUSTS v. WHIPPLE.

(District Court, E. D. South Carolina, at Charleston.  September 27, 1918.)

No. 177.

1. COURTS ☞372(4)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
   In cases involving construction of contracts affecting interests in real estate, even where, when the rights of the parties accrued, there was no settled law of decision in the state establishing a rule of property binding on federal courts, such courts should, unless strongly convinced of their error, follow the state decisions.

2. LOGS AND LOGGING ☞3(11)—CONSTRUCTION—CONDITION SUBSEQUENT—CONVEYANCE OF STANDING TIMBER.
   A deed to standing timber, giving the grantee 10 years from the time of commencing to cut within which to cut and remove the timber, vests in the grantee a present estate in the timber trees, with the right to begin cutting within a reasonable time from the date of the deed.

3. DEEDS ☞145—CONSTRUCTION—COVENANT OR CONDITION.
   If the language in a deed is of doubtful import, the court will construe it as a covenant, for breach of which damages may be recovered, rather than a condition working a forfeiture of the estate.

4. LOGS AND LOGGING ☞3(14)—CONSTRUCTION—CONVEYANCE OF STANDING TIMBER.
   Failure of the grantee of standing timber to begin cutting the same within 14 years *held* to terminate his estate therein, where under his deed he was required to begin cutting within a reasonable time.

In Equity.   Suit by the Norfolk Bank for Savings & Trusts against C. S. Whipple.   Motion for injunction denied, and bill dismissed.

Bryan A. Hagood, of Charleston, S. C., and Edward P. Buford, of Lawrenceville, Va., for complainant.

L. D. Lide, of Marion, S. C., Townsend & Rogers, of Bennettsville, S. C., and W. C. Miller, of Charleston, S. C., for defendant.

CONNOR, District Judge.   The bill, answer, exhibits, and testimony disclose the following case:

On January 30, 1899, H. R. Peele, being the owner of a tract of land with the timber standing and growing thereon, containing 777 acres, in consideration of the sum of $400 conveyed the timber of the dimensions named in the deed to the Cape Fear Lumber Company. The deed contains the following clause:

"The said Cape Fear Lumber Company to have ten (10) years from time they commence to cut the timber to cut and remove the same, and [if] at the end of that time they have not removed said timber, then to pay six per cent. upon the purchase price, they can have ten years longer to remove the same."

Thereafter, in August, 1904, and before the said lumber company had cut or removed any timber from said land, it conveyed to the Marion County Lumber Company all of its right, title, and interest in and to the timber, with the right to cut and remove the same, conveyed by Peele.   Thereafter, on December 27, 1910, and before either of said companies had cut or removed any part of the timber, Peele con-

veyed the land upon which the timber was standing, in consideration of $4,600, to Ansel A. Gray, who, at the time of filing the bill herein, was the owner thereof. On March 5, 1905, the Marion Lumber Company executed a deed in trust to complainant, Norfolk Bank for Savings & Trusts, conveying, among other timber rights and contracts, the timber conveyed by Peele to the Cape Fear Lumber Company, and by said company to the Marion County Lumber Company, for the purpose of securing a bond issue. On April 3, 1913, said Marion County Lumber Company executed a second deed in trust, conveying the same property, to secure an additional bond issue. There was, at the time of filing the bill, bonds secured by said deeds outstanding to the amount of $50,000.

On the 6th day of February, 1913, Ansel A. Gray instituted in the court of common pleas of Marlboro county a suit against the Marion County Lumber Company, for the purpose of removing the cloud from the title to the standing timber. alleging that, by its failure to cut and remove the timber on the land purchased by him from H. R. Peele within a reasonable time, the title had reverted to plaintiff, etc. The bill was dismissed by the circuit judge. Upon appeal to the Supreme Court the judgment was reversed, and it was adjudged that by the failure to commence to cut the timber in a reasonable time "the right to cut was ended." Gray v. Marion County Lumber Co., 102 S. C. 289, 86 S. E. 640. This decision was rendered October 15, 1915. On the 13th day of October, 1913, said Ansel A. Gray and defendant, C. S. Whipple, entered into a contract whereby Gray agreed to sell and Whipple agreed to buy the timber on the tract of land purchased from Peele, provided that in the suit brought by Gray against the Marion County Lumber Company it was adjudged that the title to the timber was in Gray. If the suit resulted adversely to Gray, the contract was to "terminate." Whipple agreed to pay $3,000 cash and execute his notes secured by mortgage on the timber for $6,000. He was to have ten years from the date of the deed to cut and remove the timber.

On November 1, 1915, upon the decision of the case by the Supreme Court, Gray executed to Whipple, pursuant to the terms of the contract, a deed for the timber, upon receipt of $6,000 cash and his notes for $3,000. Whipple began to cut the timber, whereupon complainant brought this suit. The jurisdiction of this court is based upon diversity of citizenship. All of the deeds and contracts referred to were duly recorded in Marlboro county. Defendant shows, in addition to the foregoing facts relating to the title to the timber, that the deed in trust to the complainant, trustee, includes several other lots of timber and timber contracts, the value of which is not shown; that there is outstanding $40,000 of the bonds secured by the first trust deed, and $20,000 of those secured by the second deed; that the Marion County Lumber Company has surrendered its charter and conveyed its property to the Marion County Lumber Corporation, a Virginia corporation, which has assumed the payment of the debts of the lumber company; that the officers of complainant had knowledge of the pendency of the suit by Gray against the Marion County Lumber Company, and of other suits pending in the courts of South Car-

olina, involving the title to the timber covered by the deeds in trust, and failed to intervene therein. It appears that Gray did not have actual notice of the deeds in trust to complainant when he purchased from Peele. This is immaterial, because the deeds were recorded. He had notice of, and purchased subject to, the deed from Peele to the Cape Fear Lumber Company.

It is not seriously contended that complainant, in respect to the first deed in trust, is bound by the decree in the case of Gray v. Marion County Lumber Company. Its deed was on record, and, if plaintiff had so desired, he could, by substituted service, have brought it into the record. As to the second deed, executed after the suit was instituted, it would seem that it occupies the attitude of a purchaser pendente lite and is bound by the decree.

[1] Counsel for complainant challenge the decision of the Supreme Court of South Carolina, in the case of Gray v. Lumber Company, in respect to the extent to which it is binding upon this court, and its value as a correct adjudication of the rights of the parties claiming under the deed from Peele to the Cape Fear Lumber Company. It is conceded that the title of complainant is dependent upon the construction of that deed and the course pursued by the successors in title to the land and the timber. Counsel insist that, conceding the well-settled rule by which this court is required to follow the decision of the state courts, upon which property, rights, or rules of property, are based, the remedies afforded and modes of procedure pursued in the federal courts, sitting as courts of equity, are not determined by local laws and rules of decisions, but by general principles, rules, and usages of equity having uniform operation in those courts wherever sitting. Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856. I do not understand that the decision in that case drew into question or limited the well-settled rule laid down in Burgess v. Seligman, 107 U. S. 20 (33), 2 Sup. Ct. 10, 27 L. Ed. 359, and Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, and followed in numerous other cases.

It is uniformly held that state Codes of Procedure, abolishing the distinction between actions at law and suits in equity, with the results which follow therefrom, do not limit or affect either the jurisdiction or modes of procedure of federal courts in equity causes. The primary question to be settled in this case is whether the Supreme Court of South Carolina has, by a current of decisions, so construed deeds containing substantially the same language and provisions as to make a rule of property in that state. The latest discussion of the subject and classification of the cases coming within the rule laid down in Burgess v. Seligman is found in the opinion of Mr. Justice Harlan in Kuhn v. Fairmont Coal Co., supra. The cases are cited in the opinion in Highland Park Mfg. Co. v. Steele, 232 Fed. 10, 146 C. C. A. 202.

The questions ably discussed by the learned counsel for complainant are: Should the court, in obedience to the decisions of the Supreme Court, adopt as binding upon its judgment the decision of the Supreme Court of South Carolina in Gray v. Marion County Lum-

ber Co., not as res judicata, but as prescribing a rule of property, which the court should apply in this case? Gray v. Marion County Lumber Co., is decided upon the authority of Minshew v. Lumber Co., 98 S. C. 8, 81 S. E. 1027 (1914), in which a writ of error was dismissed for want of jurisdiction. See 235 U. S. 685, 35 Sup. Ct. 202, 59 L. Ed. 424. While the deed construed in that case is not in the exact language used in this, the court said:

"This case cannot be distinguished in any essential particular, either of law or fact, from the particular case."

After disposing of exceptions directed to the admissibility and effect to be given to parol evidence, Mr. Justice Watts says:

"Under contracts of this character, the purchaser has only the right to have a reasonable time to get the fruits of his purchase. He has no right to enjoy, by indefinite extension, what would practically amount to a perpetuity and deprive the owner of the enjoyment of his property."

The learned justice says:

"It has been decided by this court in Flagler v. Lumber Company, 89 S. C. 328, 71 S. E. 849 (1911), McClary v. Lumber Company, 90 S. C. 153, 72 S. E. 145 (1912), and Atlantic Coast Realty Company v. Litchfield, 90 S. C. 363, 73 S. E. 182 [728], that the grantee must begin the removal of the timber within a reasonable time, and it follows, as a natural, logical, and irresistible sequence that, upon the failure to commence the removal within a reasonable time, the estate or interest granted is terminated and the interest granted reverts to the grantor or his privies."

An examination of the cases cited discloses that in each of them the grant of the timber is followed by a limitation upon the time within which the grantee may cut and remove the timber, fixed by reference to the time at which it "begins cutting and removing," followed by a clause extending the time limit upon the payment of interest on the purchase price. We thus see that, from 1911 until the decision of the Gray Case (1915), the court has uniformly held that deeds conveying standing timber, coupled with the language found in the deed from Peele to the Cape Fear Lumber Company, conveyed to the grantee a determinable or qualified fee to the timber which determined upon the expiration of the period fixed by reference to the time the grantee began to cut and remove the timber. It will be observed that, in the cases cited, the construction of the language was essential to a decision of the case. In each case it was strenuously insisted that the timber was conveyed in fee, and that, by the failure to cut and remove within the time limit, the title did not revest in the grantor. It is in evidence in this case that learned counsel so advised the complainant. Such has been, at all times, in South Carolina and other states, the contention of counsel representing the timber companies.

In Rogers v. Marion County Lumber Corporation (S. C.) 93 S. E. 1055, the court in a per curiam opinion treats the question as closed —the law settled. The decisions of the Supreme Court of South Carolina place the question clearly within the rule of stare decisis. Complainant insists that the law was not so settled at the date upon

which its right accrued.  In Kuhn v. Fairmont Coal Co., supra, it is said:

"Where, before the rights of the parties accrued, certain rules relating to real estate have been so established * * * as to become rules of property and action in the state, those rules are accepted * * * as authoritative declarations of the law of the state."

This limitation, in respect to the time at which the "rights of the parties accrued," as related to the time when the "rule of property" was "established," invites recurrence to the dates of the deeds and the South Carolina decisions.  The deed from Peele to the Cape Fear Lumber Company bears date January 30, 1899.  Accepting the South Carolina rule as to the reasonable time within which the grantee, or its assigns, should begin to cut at approximately 12 years, the right of complainant to demand the extension of time accrued in 1911. Gray did not bring his action against the Marion County Lumber Company until February 6, 1913.  While defendant entered into an executory contract with Gray for the purchase of the timber, he did not acquire such title as Gray had, and pay the purchase price, until November 1, 1915, subsequent to the decision by the Supreme Court holding that complainant's title to the timber had determined at the date when the suit was brought, January 27, 1913.

In the Flagler Case, decided in 1911, it is said that the question presented, the construction of a timber deed containing language from which the court found that the parties intended to place a time limit to the right to cut and remove the timber, had not theretofore been before the court.  It was there distinctly held that when such intention was expressed in the deed, or could be reasonably inferred, the grantee did not take an absolute fee, but that he was bound to commence the removal of the timber within a reasonable time.  Judge Rucker, after reviewing the cases relied upon by defendant to sustain its contention, and decided cases in other courts, thus states the conclusion:

"Suffice it to say that we are of opinion that, both by the inherent reason of the thing, as well as by authority, the true rule is that, wherever it is apparent in a contract that the parties had in view some time for the commencement of the removal of the timber, which intent was not embodied in the * * * contract, the law will presume, and will enforce, that such commencement of the removal of the timber shall be within a reasonable time from the date of the contract."

The court reversed the decree of the trial court dismissing the bill, and remanded the case, with direction to the court to take testimony and ascertain what would be a reasonable time.  The language of the extension clause in the deed before the court was, in all essential respects, the same as in this.  The grantee was given 10 years from the time when it began cutting and removing, with the right to an extension upon payment of interest.  The deed bore date June 10, 1899. Every subsequent decision has been consistent with that made in the Flagler Case.  It will be observed that the court did not hold that the time elapsing between the date of the deed and the decision was unreasonable.  It left the question open for determination of the trial court, upon testimony, as a question of fact.

Conceding, for the present, that at the time the right of complainant to tender the interest and demand the additional time accrued the decisions of the South Carolina court had not established a rule of property applicable to complainant's deed, and that the decisions thereafter made are not to be "accepted as authoritative declarations of the law," the question is presented whether the case falls within the other classifications made by Judge Harlan, in which he says:

"It is not only the right, but the duty, of the federal court to exercise its own judgment, as when the case depends upon the principles of general jurisprudence. * * * For the sake of comity, and to avoid confusion, the federal courts should always lean to an agreement with the state court, if the question is balanced with doubt."

It is suggested that, while the timber deed conveyed real property situate in South Carolina, and in so far as the kind and quality of estate is conveyed the decisions of the court of that state are rules of property, the question presented here 'involves the construction of a superadded contract prescribing the terms upon which a valuable right may be enjoyed, which should be construed by this court upon principles of general jurisprudence—the intention of the parties. The distinction is stated in Kuhn v. Fairmont Coal Co., supra, and a number of illustrative cases commented upon. The learned justice says:

"There are adjudged cases involving the meaning of written contracts having more or less connection with land that were not regarded as involving a rule in the law of real estate, but as only presenting questions of general law, touching which the federal courts have always exercised their own judgment, and in respect to which they are not bound to accept the views of the state courts."

The opinion, and the dissenting opinion of Mr. Justice Holmes, contain an interesting and exhaustive discussion of the question in the light of the decided cases. Certainly, for the reasons strongly stated by Judge Dayton in Kuhn v. Fairmont Coal Co. (C. C.) 152 Fed. 1013, the federal courts should, unless strongly convinced of their error, follow the decisions of the state courts upon the questions presented, and upon the decisions of which the rights of the parties depend.

[2] In his opinion the learned District Judge has made a full and valuable collection of illustrative cases. This view of the case opens up for examination the very interesting questions presented and argued with marked ability by counsel for complainant. They challenge the decision of Gray v. Lumber Co., supra, and the cases upon which it is based. To state the contention in the language of the brief:

"A present estate in the timber vested in the Cape Fear Lumber Company, immediately on the execution of the deed from H. R. Peele, which has passed by mesne conveyances to the plaintiff, by virtue of the deed in trust."

This may be conceded. The best considered authorities so hold. From this proposition it is argued that such estate is not one which is determinable by operation of law for failure of the grantee, or its assigns, to commence the cutting and removal of the timber within a reasonable, or any other, time.

An examination of the opinions of courts, dealing with timber deeds, containing limitations upon the time for cutting and removing, discloses a purpose to give to them a construction, effectuating what the court finds to have been the intention of the parties, and to conserve the rights of both parties resort to analogies, sometimes resulting in confusion. The early cases in states wherein the cutting of timber was conducted by corporations operating large mills, buying standing trees from the owners of the land, either with or without a provision fixing the time within which they were to be cut and removed, disclose different views and variant constructions. By some it is held that no title vests in the trees until they are cut, and that therefore only such as are cut and removed within the time fixed pass to the grantee. Strasson v. Montgomery, 32 Wis. 52. It is said:

"Such deed does not immediately pass the title to the trees, and is not a sale, or a contract for a sale or interest in land, but an executory contract for a sale of chattels, to take effect when the trees are cut and severed from the land, with a license to enter and cut during the time fixed." Fletcher v. Livingston, 153 Mass. 388, 26 N. E. 1001.

By other courts it is held that, upon failure to cut within the time limited by the deed, the title to the standing trees, or such of them as remained uncut, does not revert to the owner of the land, but remains in the grantee of the trees; that the failure to cut within the time limit did not work a forfeiture of the estate; that the license to enter and cut expired at the end of the time fixed. This construction left the owner of the trees in the position of having title to timber trees standing and growing on the lands of the grantor, with no right to enter and cut them. It was said that in such cases, by entering upon the land, the owner of the trees committed an actionable trespass; the damage recoverable was the injury to the soil, in making the entry— not the value of the trees cut and removed.

The conclusion to which other courts came was that the title to the timber vested in the grantee, with the condition annexed that if it was not cut and removed within the period fixed by the deed, or, if no time was fixed, within a reasonable time, the title to the timber not cut and removed reverted to the owner of the land or his grantee. The Supreme Court of Michigan, in Williams v. Flood, 63 Mich. 493, 30 N. W. 96, said:

"It is not very important to discuss the exact nature of plaintiff's rights under the written contract. Whatever they were, they included an absolute sale of all the timber described, subject only to such qualifications of the right of removal as the contract mentions. At most, this condition would only operate by way of forfeiture. The timber had all been paid for, and all belonged to plaintiff, unless lost by that forfeiture for nonremoval."

In Bunch v. Elizabeth City Lumber Co., 134 N. C. 121, 46 S. E. 24, the question in respect to the construction of a timber deed, with a clause limiting the time for cutting computed from the time the grantee began to cut, was first presented to the Supreme Court of North Carolina. It was argued on petition for rehearing, by eminent and learned counsel. Mr. Justice Walker reviewed the authorities, reaching the conclusion that the deed vested a present title to the timber in

the grantee; that the right to cut and remove was limited to a reasonable time; that, upon the failure to begin to cut within such time, the title reverted to the grantor. This decision was rendered in 1903. He says:

"It is well settled on principle and by authority that the legal effect of the instrument is that the vendor thereby conveyed to the vendee all of the trees and timber on the premises which the vendee should remove therefrom within the prescribed time, and that such as remained thereon after that time should belong to the vendor or to his grantee of the premises."

In Midyette v. Grubbs, 145 N. C. 85, 58 S. E. 795, 13 L. R. A. (N. S.) 278 (1907), Mr. Justice Hoke reviews the decided cases and says:

"It may now be taken as settled that growing trees are a part of the realty, and a contract to sell and convey them, * * * must be reduced to writing. These authorities also clearly establish that, on the expiration of the time stated in such a contract within which the timber may be removed, all right in the vendee shall cease and determine, and the estate in so much of the standing timber as has not by that time been severed shall revert to the vendor; and both positions are upheld in numerous and well-considered cases in other jurisdictions."

See Hawkins v. Lumber Co., 139 N. C. 162, 51 S. E. 852; Lumber Co. v. Corey, 140 N. C. 467, 53 S. E. 300; Hornthal v. Howcott, 154 N. C. 228, 70 S. E. 171; Jenkins v. Lumber Co., 154 N. C. 357, 70 S. E. 633.

In a very able and well-considered opinion by Judge Keith, in Wright-Young v. Camp. Mfg. Co., 110 Va. 678, 66 S. E. 843 (1910), after a thorough examination of the decided cases, the court adopted the opinion of those courts which held that the deed conveyed an estate in the timber, subject to be divested, and revert to the grantor, upon failure to cut and remove within the time fixed in the deed, or a reasonable time. He thus concludes the discussion:

"Looking to the whole deed, and all of its provisions must be considered in order to arrive at its proper construction, we are of opinion that it was not the intention of the parties to give an absolute and unconditional title to the timber, but only such as was cut and removed within the time limited by the deed, and such extensions thereof as the grantee was entitled to demand upon a fair construction of the deed, or as might be agreed upon between the parties."

In that case the deed was executed January 24, 1895, with a limit of five years to cut and remove the timber, and the right to demand an extension "as long as the grantee might desire," upon payment of interest on the purchase price. At the end of five years the grantee paid the interest, and continued to do so for four years, when the grantor refused to accept further interest and sold to another person, who began to cut the timber. The lumber company brought suit to enjoin the cutting. Although the contract gave the grantee the right to demand an extension of time "as long as it might desire," such right was construed to mean "a reasonable time." Quoting with approval the language used in McIntyre v. Barnard, 1 Sandf. Ch. (N. Y.) 52, the learned president said:

"It is only by this construction that we can give full scope to the whole intention expressed by the instrument; and at the same time we relieve it

*from the irrational consequences to which the defendant's construction inevitably leads."*

The effect which would follow from the contention that these deeds impose permanent burdens upon timber lands, and prevent the owner from bringing them under cultivation or other use to which they are adapted, does violence to the intention of the parties, and imposes such burdens upon the lands of the grantors as greatly to diminish, if not destroy, its value.

The court, in that case, noting that nine years had elapsed since the execution of the deed, gave the lumber company one year within which to cut, from the filing of the decree. This case was cited with approval by the same learned judge in Brown v. Surry Lumber Co., 113 Va. 503, 75 S. E. 84. There were, in that case, facts which differentiated it from the Wright-Young Case, but the court adhered to the construction of the deed announced in the first case. Quigley Furniture Co. v. Rhea, 114 Va. 271, 76 S. E. 330.

In Smith v. Ramsey, 116 Va. 530, 82 S. E. 189, Judge Buchanan refers to the great "diversity of judicial decision" in the construction of timber contracts, not only in different jurisdictions, "but the decisions of the same court have not always been uniform." He discusses the "vexed question," citing the Wright-Young and the Rhea Cases, supra. He concludes:

"Those decisions would seem, therefore, to settle, if decisions can settle a question, that the provisions in such contracts for the cutting and removal of the timber within a fixed period are not covenants, but conditions."

In Adkins v. Huff, 58 W. Va. 646, 52 S. E. 773, 3 L. R. A. (N. S.) 649, 6 Ann. Cas. 246, Huff conveyed to Adkins a tract of land, reserving and excepting the timber, giving 34 months from the date of the deed to cut and remove the timber. Eliminating conditions which came into the situation after the date of the deed, the grantor not having cut and removed the timber within the period fixed, the grantee, claiming that the title to the timber became absolute in him, began to cut. The grantor, claiming under the reservation, applied to the court for an injunction, which was granted. Upon appeal the decree was reversed and the bill dismissed. Judge Poffenbarger said:

"The authorities are practically uniform in holding that an instrument granting standing timber, and containing a clause requiring or permitting it to be removed within a specified time from the date of the grant, gives no absolute and unconditional title to the property. Some courts hold the right of the grantee to be a license, others a lease, and others a defeasible title to the timber. By the great weight of authority it is determined that no right or title exists in the grantee after the expiration of the time specified in the deed or contract."

In support of this conclusion a large number of cases from the courts of Vermont, Michigan, New York, Minnesota, Massachusetts, Wisconsin, Ohio, and Maine are cited. Holding that the same construction should be given a reservation as a conveyance of timber with a time fixed for cutting, the court enjoined the grantor claiming under the reservation from cutting after the expiration of the time limit. The judge said obiter that if no time for cutting was fixed,

and the deed contained apt words to convey a fee, the title was "absolute and unconditional," citing cases from Alabama and Michigan.

In Keystone Lumber & Mining Co. v. Brooks, 65 W. Va. 512, 64 S. E. 614, Judge Brannon cites Adkins v. Huff, supra, but appears to reject the conclusion reached. He does not overrule it, but, with all deference to the learned judge, I am unable to reconcile much that he writes, or his conclusion, with the decision in that case. It may be that the two decisions may be reconciled by noting the construction placed on the language of the two deeds. The inference which I draw from the opinion is that the learned judge leaned to the view that the language used in timber deeds fixing a time within which the timber was to be removed is to be construed as a covenant on the part of the grantee, and not a limitation or condition subsequent. The argument of counsel for complainant in this case finds much support in Judge Brannon's opinion.

It is held by Judge Rose in Cullen v. Armstrong (D. C.) 209 Fed. 704, that according to the decision of the Maryland court a contract for the sale of standing timber, or, as he describes it, a "timber leave," is personal property; it is bought and sold as goods, wares, and merchandise.

I have, at probably unnecessary length, reviewed the decisions in the state courts in this circuit, because of my very high regard for the learning of the justices, and a careful consideration which they have given to the construction of these timber deeds, and for the additional reason that I deem it important that the decisions of the state and federal courts in this circuit shall be uniform.

If the time at which the rights of the lumber companies, purchasing timber and operating large mills in these states, be fixed at the date of the deeds, between the years 1895 and 1905, approximately, rather than at the dates at which the right to demand extension of time for cutting and removing—1905 to 1915, approximately—it will be found that in neither of the states had there been such a number of cases decided as to constitute authoritative declarations of the law controlling the federal courts. If the date of the deeds be adopted as the time when the right of the parties accrued, the question presented in this and other cases coming before the District Courts in this district must be treated as open to the independent judgment of the federal court, observing the principle announced in Kuhn v. Fairmont Coal Co., supra.

[3] In the very carefully prepared brief of counsel for complainant it is contended that the courts of South Carolina, and therefore Virginia and North Carolina, have fallen into error in holding that the clause fixing the time within which the timber shall be cut and removed is a condition subsequent, and that failure to comply with such provision works a forfeiture of the estate in the timber; that such language should be construed to be a personal covenant on the part of the purchaser to cut and remove the timber within the time prescribed. It is well settled that, if language is of doubtful import, the court will construe it to be a covenant, for breach of which damages may be recovered, rather than a condition working a forfeiture

of the estate. King v. N. W. R. R. Co., 99 Va. 625, 39 S. E. 701; Bangert v. Roper Lumber Co., 169 N. C. 628, 86 S. E. 517. In the last-cited case, in which there were two dissents, the court held that, under the terms of the deed, payment was not required in advance. The further contention is made that, if the provision be construed as attaching to the estate a condition subsequent, the failure to comply with its terms does not work a forfeiture until action is taken by the party entitled to take advantage of the breach, as by re-entry, notice, or otherwise—that failure to do so operates as a waiver of the breach; that a court of equity will not lend its aid to enforce a forfeiture of a condition subsequent. Authorities are cited sustaining these positions.

Language is used by some of the courts indicating that they treated the clause limiting the time for cutting the timber as creating a condition subsequent. It would seem, however, that the better interpretation of the opinions leads to the conclusion that they likened the deeds, and the estate conveyed to a base or qualified fee. Bunch v. Lumber Co., supra. This estate is defined by Blackstone as:

"Such a one as has a qualification subjoined thereto and which must be determined whenever the qualification annexed to it is at an end." 2 Com. 147 (*109).

In the note to Jones' Blackstone, the case of Wiggins Ferry Co. v. Ohio & M. Ry. Co., 94 Ill. 83, is cited. It is said of this character of estate:

"It is true the estate here may not endure forever; it may be determined by the failure to use and employ the rights and easements granted in the manner prescribed in the grant; but if they shall be so used and employed the grant is forever. And this seems to meet Blackstone's definition of a qualified or base fee."

It is also said that the estate created by the conveyance is not properly an estate on condition, either precedent or subsequent, but a base or qualified fee. Kilpatrick v. Graves, 51 Miss. 432.

Chancellor Kent defines a qualified base or determinable fee as:

"An interest which may continue forever, but the estate is liable to be determined without the aid of a conveyance, by some act or event circumscribing its continuance or extent." Com. IV, *9.

Mr. Justice Walker states the proposition clearly, saying:

"In no event should we give a construction to the instrument which will confer any greater right or estate than is commensurate with the object and purpose of the parties, as expressed in it." Jenkins v. Lumber Co., supra.

It is manifest that these "timber contracts" are sui generis, and in the effort to construe them by analogy to deeds, or instruments conveying land, difficulties are encountered. The courts which adopt the view of the South Carolina court, that an estate vests in the grantee upon the delivery of the deed, with a limitation upon the time for cutting and removing, hold that upon the expiration of such time the title "determines," "reverts," or use equivalent terms, excluding the idea that the clause fixing the time creates a condition subsequent.

I have given to the well-considered argument of counsel careful consideration. They are confronted, however, with the fact that the Supreme Court of South Carolina, in accord with the large majority of other state courts, especially in this judicial circuit, has, by an unbroken line of decisions, held that the title to the timber of the Cape Fear Lumber Company, and its assignee, determined upon the failure to cut and remove within a reasonable time, and that such time had elapsed before Gray brought his suit against the Marion County Lumber Company, or it made a tender of the interest and gave notice of the additional time required. This court is asked to disregard the decision of the South Carolina court, and hold that complainant is the owner of the timber under the deeds in trust executed by the Marion County Lumber Company, and that defendant, purchasing from the owner of the land subsequent to the decision of the Gray Case, be enjoined from cutting. To so hold would do violence to the wise and salutary rule prescribed by the Supreme Court of the United States in Kuhn v. Fairmont Coal Co., supra, that—

"To avoid confusion, the federal court should always lean to an agreement with the state court, if the question is balanced with doubt."

The wisdom of this rule followed by the federal courts is illustrated by the situation presented in this case, and other timber contracts, or deeds, of the same character. It appears from the state reports that parties and corporations holding deeds for timber on extensive tracts of land, in the South Atlantic states, containing clauses limiting the time for cutting, differing in some respects, but substantially similar, have strongly pressed upon the state courts the contention made here. The opinions of the judges in the cases cited, and many others, disclose a careful, anxious effort to give to the deeds a fair, reasonable construction. As said by Judge Keith, "looking to the whole deed, and all of its provisions," and "avoiding irrational consequences," they have reached the conclusion that—

"It was not the intention of the parties to give an absolute and unconditional title to the timber, but only such as was cut * * * within the time limited by the deed, and such extensions thereof as the grantee was entitled to demand upon a fair construction of the deed, or as might be agreed upon between the parties."

While I am not inadvertent to the fact that other courts have held to the contrary, I concur in this construction.

It is urged that in Crown Orchard Co. v. Dennis, 229 Fed. 652, 144 C. C. A. 62, the Court of Appeals of this circuit rejected the construction placed upon the timber deeds by the South Carolina court in the Flagler and Minshew Cases, and adopted, as its independent judgment, the rule laid down in the Prettyman Case, 97 S. C. 247, 81 S. E. 484, resulting in the conclusion that, when the extension clause gave such additional time as the grantee "might desire," the doctrine of reasonable time could not be applied; that the right to cut and remove was unlimited. It will be noted that in the Prettyman Case the circuit judge of the state court, in his decree, said that when such time was granted as the grantee "might desire," in "unambiguous and express terms," the "reasonable time" rule did not apply; that "when

the parties speak for themselves the court cannot imply." The learned judge fixed the additional time to cut at 10 years, because "that was the time demanded by the grantee." He says: "The plaintiff had thus, by its notice, fixed the duration of the extension." A reasonable construction of the language of the circuit judge justifies the argument that he was of the opinion that the language of the deed excluded the application of the "reasonable time" rule. The Chief Justice in a per curiam opinion says that, "for the reasons therein set forth, the judgment is affirmed." Judge Watts, in his dissenting opinion, suggests that, by adopting the decree "as the judgment of this court," it was committed "to a decision and a policy that will be far-reaching in its effect and prejudge other cases of similar character." This case was strongly pressed upon the federal court in the argument of the Crown Orchard Case. Judge Knapp says:

"It is not necessary for us to affirm that the Prettyman Case established a rule of property in South Carolina which we are bound to apply. We follow it upon the question in dispute, not merely out of deference to the court which decided it, but because the decision commends itself to our judgment as just and correct."'

From this language it is argued in this, and other, cases that this court is bound, as by an authoritative declaration of the law, to hold that the Cape Fear Lumber Company and complainant, its assignee, is entitled to an unlimited and unlimitable time to cut and remove the timber. The language quoted, without limitation, is capable of that construction. It may be suggested that, in saying that the judgment in the Prettyman Case was "for the reasons given" affirmed, the Chief Justice was referring to the fact that the period of 10 years was fixed because, as stated by the circuit judge, that was the time fixed by the plaintiff, thus limiting the scope of the per curiam opinion of the court. However this may be, it is manifest that the learned judge in his opinion in the Crown Orchard Case did not intend to hold that the deed conferred an unlimited time to cut. He says that the exercise of the right conferred by the deed "must be an honest and justifiable desire, not a pretended or fantastic desire. In short, we take the phrase to mean such additional time as may be reasonably desired by the party having the right to an extension." The court remanded the case, with direction to the court below to fix the time, etc.

Referring to the Prettyman Case, supra, it is worthy of note that the decision was rendered on April 23, 1917, and the decision in the Minshew Case on April 27, 1917. Judge Watts, who wrote in the Minshew Case, makes no reference to the decision in the other case, although he reviews all of the other decisions of the court relating to the construction of timber deeds. There were differentiating facts in the cases. As we have seen, the Minshew Case is cited as the authoritative declaration of the law in the Gray Case.

I have given to the language used by the court in the Crown Orchard Case careful consideration, and said this much to exclude the suggestion that I did not regard it as controlling authority in like cases. I shall indulge the hope that my decree in this may be reviewed, so that, without regard to the conclusion reached, the District Judges in this

circuit, and the parties who have large interests involved in such contracts, may be advised what construction the federal courts will place upon these deeds.

[4] I conclude that the deed from Peele to the Cape Fear Lumber Company vested in the grantee a present estate in the timber trees, with the right to begin cutting and removing them within a reasonable time computed from the date of the deed; that, upon failure to begin cutting within such time, the title to, and estate in, the timber determined and reverted to the owner of the land or his grantee, Gray; that, by the failure to begin cutting the timber within the time elapsing between the date of the deed and the institution of the suit by Gray against the Marion County Lumber Company—14 years—the right, title, and estate to the timber vested in the lumber company, and such rights as vested in complainant by virtue of the deeds in trust determined and reverted to Gray, the owner of the land; that by the deed from Gray to defendant he became the owner of the timber, with the right to cut and remove it, according to the terms and provisions of the deed under which he claims.

This construction of the deed disposes of several interesting questions discussed by counsel, upon the theory that defendant's title was dependent upon a forfeiture wrought by breach of a condition subsequent. It also renders unnecessary the discussion of questions presented by defendant.

The motion for an injunction is denied, and the bill dismissed, at the cost of complainant.